IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAREE ABDULLAH, a/k/a GRENILE GAINEY and JARMAINE TRICE, a/k/a ERIC GREENE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 22-4143 |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                   **April 24, 2023**

Plaintiffs Naree Abdullah and Jermaine Trice bring four claims against the City of Philadelphia ("the City"), Assistant District Attorney Yvonne Ruiz and unidentified assistant district attorneys John Doe(s), and Philadelphia Police Department officers and/or detectives Joseph Walsh and Anthony Tomaino (with Ruiz and Doe(s), "the Individual Defendants"). The City moves to dismiss the § 1983 Monell claim brought against it. The Individual Defendants have not answered.

I.      **SUMMARY OF FACTS**

        A.      **Underlying Criminal Proceedings**

The facts as alleged in the Amended Complaint are as follows. The Plaintiffs, Naree Abdullah (also known as Grenile Gainey) and Jarmaine Trice (also known as Eric Greene), were tried and found guilty of second-degree murder in 1996 due to their alleged participation in a December 1993 robbery of a grocery store in which the store owner was killed. Am. Compl. ¶¶ 1, 23. According to Plaintiffs, the verdicts were based on the testimony of a single witness and the

1

redacted statements of co-defendants.  Id. ¶¶ 24, 51-58.  Both Plaintiffs were sentenced to life without the possibility of parole.  Id. ¶ 1.  Twenty-seven years later, the Plaintiffs' convictions were vacated.  Id. ¶ 2.

### B. Plaintiffs' Allegations of Wrongdoing

Plaintiffs allege that certain decisions made by the police officers, detectives, and prosecutors (in particular, the Individual Defendants) violated their right to a fair trial.  Id. ¶ 3.  Specifically, Plaintiffs allege that Defendant Yvonne Ruiz, an Assistant District Attorney, elicited false testimony from the witness who testified against Plaintiffs.  Id. ¶¶ 26-31.  Plaintiffs allege that the witness falsely testified that the Plaintiffs' trial was the first time the witness had testified in a homicide case.  Id. ¶ 29.  Plaintiffs allege that Defendant Ruiz knew this testimony was false when she elicited the testimony.  Id. ¶ 27.  Plaintiffs allege that the falsity of this testimony was also brought to the attention of the Philadelphia District Attorney's Office in 2017 when one of the Plaintiffs' co-defendants discovered the issue and raised it in a PCRA claim.  Id. ¶¶ 30-32.  Plaintiff Abdullah also raised the issue in a PCRA filing.  Id. ¶ 33.  However, the District Attorney's Office continued to oppose Plaintiffs' petition for relief.  Id. ¶ 34.  Plaintiffs allege that the false testimony violated their Fourteen Amendment rights to due process under Napue v. Illinios, 360 U.S. 264 (1959).  Id. ¶ 35.

Plaintiffs also allege that the Individual Defendants withheld Brady material, including the incident report of a similar robbery the same evening and the name of additional witnesses and alternative suspects.  Id. ¶¶ 37-48.  Plaintiffs allege that the City's employee, Defendant Walsh, testified that he was unable to find any report of a robbery at a bar on the same day as the robbery in question, and the prosecutor, Defendant Ruiz, indicated that the detectives and officers could not find any incident report.  Id. ¶¶ 40-41.  The detective, Defendant Tomaino, also testified that

there was no incident report about the alleged bar robbery. Id. ¶ 42. However, the Plaintiffs allege that post-conviction review of Ruiz's file shows an incident report regarding the bar robbery. Id. ¶ 43. The file also allegedly shows several alternative suspects and additional witnesses which were undisclosed to the Plaintiffs. Id. ¶¶ 44-48.

Plaintiffs also allege that the trial court's decision not to sever Plaintiff Trice's trial from that of his co-defendants and the co-defendants' redacted statements introduced at trial violated Plaintiff Trice's constitutional rights. Id. ¶¶ 51-53. Specifically, Plaintiffs allege that Defendant Ruiz failed to uniformly redact references to the Plaintiffs in the co-defendants' statements and that Ruiz then argued that the statements corroborated the account of the only other witness who testified against the Plaintiffs. Id. ¶¶ 53-57. Plaintiffs also allege that Defendant Ruiz misrepresented the testimony of the witnesses and the contents of the redacted statements. Id. ¶ 54.

Finally, Plaintiffs allege that Defendant Ruiz violated the Plaintiffs' constitutional rights by opposing Plaintiffs' request for relief under Gray v. Maryland, 523 U.S. 185 (1998) due to the redacted statements of Plaintiffs' co-defendants. Id. ¶¶ 59-61. Plaintiffs allege that the Defendants further violated Plaintiffs' rights by failing to release or retry the Plaintiffs within 120 days of Plaintiffs' habeas corpus relief being granted in April 2021 and January 2022. Id. ¶¶ 62-73. Plaintiffs allege that they were "constructively coerced" to accept plea deals rather than wait for a new trial. Id. ¶¶ 64-68, 70-72.

Plaintiffs allege that the actions of the Individual Defendants violated Plaintiffs' right to due process of law and right to a fair trial. Id. ¶¶ 76-78. Plaintiffs also allege that the actions of the Individual Defendants were part of a larger policy, pattern and practice by the City of Philadelphia ("the City") of unconstitutional misconduct in homicide investigations, concealing

and withholding exculpatory evidence, and tampering with or manufacturing evidence, among other improper behavior. Id. ¶¶ 79-80, 83-84. Plaintiffs present a number of cases that they argue are similar and that show a policy or practice by the City of violating criminal defendants' constitutional rights and failing to properly train and discipline police officers. Id. ¶¶ 81-89.

Plaintiffs bring four counts:

1. Count I: deprivation of liberty without due process of law and denial of a fair trial against all Individual Defendants;

2. Count II: conspiracy under 42 U.S.C. § 1983 against all Individual Defendants;

3. Count III: failure to intervene under 42 U.S.C. § 1983 against all Individual Defendants; and

4. Count IV: municipal liability under 42 U.S.C. § 1983 against the City.

Id. ¶¶ 90-105. Plaintiffs seek damages against all Defendants (Count V), punitive damages against the Individual Defendants (Count VI), a jury trial. Id. ¶¶ 106-109.

Plaintiffs filed their Original Complaint on October 14, 2022. Compl. (ECF 1). The City moved to dismiss (Mot. to Dismiss (ECF 8)), whereupon Plaintiffs filed an Amended Complaint dropping the claims against four other individually-named defendants (Am. Compl. (ECF 13)). The City now moves to dismiss the claims brought against it in the Amended Complaint. Second Mot. to Dismiss ("Mot.") (ECF 15). The Individual Defendants have not answered or made an appearance in the case.

## II.  SUMMARY OF BRIEFING

### A.  The City's Motion to Dismiss

The City moves to dismiss all claims brought against it, namely Count IV (municipal liability under 42 U.S.C. § 1983) and Count V (request for damages).[1]  Mot. (ECF 15) at 2.  The City argues that Plaintiffs have not adequately alleged facts showing that the City has an official policy or informal custom of unconstitutional conduct in criminal investigations or of failing to undertake meaningful investigations into allegations of misconduct.  Id. at 6-7.  The City argues that prosecutorial decisions cannot be attributed to the City or the City's policies because the District Attorney's Office is a state organization, not a city organization, and so the actions of the District Attorney's Office of Philadelphia and its employees, including Defendant Ruiz, cannot be attributed to the City.  Id. at 7-8.  Even if the City were liable for the practices of the District Attorney's Office, the City argue that the Plaintiffs have failed to support their claim with specifical allegations of a policy or custom of the Philadelphia District Attorney's Office.  Id. at 8.

Second, the City argues that Plaintiffs have failed to allege that the actions of the City's employees, Defendants Walsh and Tomaino, constituted a violation of Plaintiffs' rights, and so there is no municipal liability for those actions.  Id. at 8-9.  The City argues that where there is no viable claim against the officers, there is no viable Monell claim against the City, particularly if the officers were protected by qualified immunity.  Id. at 9.  In support of this argument, the City argues that Plaintiffs have failed to allege that either of the police officers were responsible for the failure to disclose exculpatory evidence and that the officers' duty to disclose exculpatory evidence is satisfied when they hand the evidence over to the prosecutors.  Id. at 10.  Furthermore, officers'

---

[1] While the City's Motion also includes arguments against Counts I, II, and III brought against the Individual Defendants, the City's Reply makes clear that the Motion to Dismiss is brought only on behalf of the City.  Reply (ECF 17) at 3, n.2.

5

constitutional obligation to turn over evidence was not established until 2005, after Plaintiffs' criminal trial. Id. at 11. The City also argues that Plaintiffs have failed to allege an underlying conspiracy claim because the allegations do not include details as to how, why, or when the alleged conspiracy came into being, and because the underlying actions by the officers, as alleged, did not violate the Plaintiffs' rights. Id. at 12-15. The City argues that the failure to intervene claim cannot attribute liability to the City because Plaintiffs failed to allege an underlying violation. Id. at 16-17.

Third, the City argues that Plaintiffs have failed to adequately allege a policy or custom with the required specificity. Id. at 18-23. The City argues that the allegations of "unconstitutional conduct in homicide and other criminal investigations" are too vague to satisfy the pleading requirement. Id. at 19. The City also points out that the many of the specific claims of a policy or custom have no connection to the facts at issue in this case. Id.

Fourth, the City argues that Plaintiffs have failed to allege with specificity any similar or "temporally proximate" instances of wrongdoing that would establish a custom or practice or put the City on notice of a need for increased training. Id. at 20. Despite the numerous cases that Plaintiffs identified in their Amended Complaint, the City argues that those prior cases, without some connection to Plaintiffs' allegations, do not satisfy the pleading requirement because they deal with alleged misconduct not at issue in this case. Id. 20-23.

Fifth, the City argues that Plaintiffs argue that the Plaintiffs have failed to adequately allege deliberate indifference on the party of the City's policymakers as required under Monell v. Dep't of Social Servs. Of the City of New York, 436 U.S. 658, 690-95 (1978). Id. at 23-24. The City argues that Plaintiffs' allegations no this point are merely conclusory, and that mere "awareness" does not satisfy the pleading requirement. Id. at 23-24.

Finally, the City argues that Plaintiffs' claim of damages should be dismissed as redundant. Id. at 25.

### B. Plaintiffs' Response

Plaintiffs respond, arguing that they have adequately pleaded a Monell claim against the City under two theories: a custom or policy, and a failure to train, supervise, or discipline. Resp. (ECF 16) at 17. First, Plaintiffs argue that they have adequately alleged violations of their constitutional rights by Defendants Walsh and Tomaino which are not covered by qualified immunity, and so the City cannot argue that there was no underlying constitutional violation of Plaintiffs' rights. Id. at 17-18. Plaintiffs argue that they have adequately alleged that Walsh and Tomaino engaged in "fabrication of evidence, fabricating inculpatory evidence, concealing or withholding exculpatory evidence; tampering with or manufacturing evidence, and fabricating incriminating statements from witnesses, suspects, and arrestees" by testifying that there was no incident report relating to a bar robbery when there was, in fact, such an incident report in the prosecutor's file. Id. at 18-20. Plaintiffs further argue that a Monell claim does not necessarily fail when the underlying claims against individuals failed. Id. at 21-22. Plaintiffs also argue that they have adequately alleged facts of a civil rights conspiracy among the Individual Defendants, namely that the police officers worked in connection with the prosecutor to conceal exculpatory evidence. Id. at 22-23. Plaintiffs argue that they have alleged facts necessary to establish a failure to intervene claim against the Individual Defendants because the Individual Defendants had an obligation to testify honestly and yet all the Individual Defendants failed to intervene when the others allegedly presented false testimony. Id. at 24-25.

Plaintiffs also argue that they have sufficiently pleaded the existence of a policy or custom of the City, specifically a policy or custom of

7

> unconstitutional misconduct in homicide investigations, and in particular, coercive techniques in interviews and interrogations to obtain incriminating evidence; fabricating inculpatory evidence; conducting improper identification procedures; concealing or withholding exculpatory evidence; tampering with or manufacturing evidence; and fabricating incriminating statements from witnesses, suspects, and arrestees.

Id. at 25-26.  Plaintiffs argue that the City was put on notice of this alleged policy or custom due to a 1977 *Philadelphia Inquirer* article on the subject, and because of eight cases cited by Plaintiffs in their Amended Complaint in which other individuals alleged wrongdoing on the part of the City and its employees in criminal investigations.  Id. at 26.  Plaintiffs argue that all this shows "deliberate indifference" on the part of the City.  Id.

Plaintiffs argue that the Individual Defendants are not entitled to qualified immunity.  Id. at 27-29.  Plaintiffs argue that the Individual Defendants were "on notice" that their behavior may have violated the law, even if the factual circumstances were not specifically referenced in the applicable legal holding.  Id. at 27-28, citing Halsey v. Pfeiffer, 750 F.3d 273, 295-96 (3d Cir. 2016) ("what is required is that government officials have fair and clear warning that their conduct is lawful" even if there has not been a "precise preview of the applicable legal analysis").  Plaintiffs also argue that their request for damages is not redundant.  Id. at 29.

### C. The City's Reply

The City replies, arguing first that Plaintiffs have not provided any support for their argument that the City is liable for the state prosecutor's decisions, either in an investigative or a prosecutorial role.  Reply (ECF 17) at 1-2.  Regardless, the City argues that Plaintiffs have still failed to support their claim of a policy, custom, or pattern that would expose the City to liability.  Id. at 2.  The City further argues that the Plaintiffs have not shown an underlying, actionable violation by the Individual Defendants that would expose the City to liability, either for the Fourteenth Amendment claim, the conspiracy claim, or the failure to intervene claim, due to well

8

established immunity and/or vague, insufficient pleadings. Id. at 2-7. The City also argues that the failure to intervene claim fails because such a claim necessarily fails where the Individual Defendants would have had to intervene in their own behavior. Id. at 7.

The City argues that Plaintiffs' Monell claim fails because they have not adequately pleaded the existence of a policy, practice, or custom and that Plaintiffs rely instead on allegations that are "nebulous and extraordinarily high-level[.]" Id. The City argues that Plaintiffs improperly try to narrow the pleadings in the Amended Complaint through their Response but still fail to argue the existence of a pattern or practice with the required specificity. Id. at 8-9. Finally, the City argues that the cases presented by Plaintiffs in their Amended Complaint are not sufficiently similar to the facts at issue to support the inference of a widespread practice or policy, and that the 1977 investigation by news media was too distant in the past to apply to the facts alleged in the complaint. Id. at 10-11. The City argues that Plaintiffs have failed to plead anything other than bare assertions in regard to the "deliberate indifference" element of a Monell claim. Id. at 11-12.

### III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555). While a court must assume for purposes of a motion to dismiss that the plaintiff can prove the facts alleged in the complaint, "it is not . . . proper to

9

assume that [she] can prove faces that [she] has not alleged[.]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983).

## IV. ANALYSIS OF UNDERLYING CLAIMS

The City first argues that Plaintiffs' Monell claim must fail because they have failed to adequately plead underlying claims against the City's employees. Mot. at 6-10. Plaintiffs bring three claims against the Individual Defendants: a claim under § 1983 for deprivation of liberty without due process of law and denial of a fair trial, a claim of civil rights conspiracy, and a claim of failure to intervene. Am. Compl. ¶¶ 90-101. Based on the facts as alleged in the Amended Complaint, Plaintiffs have adequately alleged facts necessary for these claims to survive a motion to dismiss.[2] Plaintiffs have alleged that the Individual Defendants withheld evidence about police reports, alternative suspects, and witnesses; falsely testified about the existence of those reports; and manufactured evidence. Id. ¶¶ 37-47. Taking the facts alleged in the Amended Complaint as true, Plaintiffs have shown a number of constitutional violations which adequately support a § 1983 claim of deprivation of liberty without due process of law and denial of a fair trial. This claim alone is enough to provide underlying support for a Monell claim against the City, and so this Court need not address the adequacy of Plaintiffs' additional claims of conspiracy and failure to intervene, particularly because the City does not move to dismiss those claims.

## V. ANALYSIS OF § 1983 MONELL CLAIM

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." Beck v. City

---

[2] The City argues that the Individual Defendants are immune from suit due to qualified immunity. Mot. at 9. Without ruling definitively on the issue, Plaintiffs appear to have pleaded that the Individual Defendants violated long-standing constitutional doctrine, and so this Court will allow their claims to move forward."

of Pittsburg, 89 F.3d 966, 971 (3d Cir. 1996). A government policy requires a decisionmaker with final authority to issue an official proclamation, policy, or edict. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Plaintiffs have not alleged the existence of a formal policy adopted by a governing body, and so must rely on allegations of a custom.

### A.     Alleged Custom

"A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of. . . officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). The custom must be pleaded with specificity, indicating "what exactly that custom or policy was." McTernan, 564 F.3d at 658. A custom "requires proof of knowledge and acquiescence by the decisionmaker." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (citing Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007)). Plaintiffs can show that an alleged custom was the proximate cause of their injuries by showing that the City "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [their injuries]." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019). Although simply alleging that the City ignored or disregarded constitutional rights "is not sufficient," Plaintiffs' allegations are sufficient to support the conclusion or inference that the decisionmakers of the City or Philadelphia Police Chief were aware of or directed the alleged custom. Id. at 659. The facts here alleged are sufficient, considering that Plaintiffs were exonerated after spending many years in prison.

Here, Plaintiffs argue that they have sufficiently pleaded the existence of a policy or custom of the City, specifically a policy or custom of

> unconstitutional misconduct in homicide investigations, and in particular, coercive techniques in interviews and interrogations to obtain incriminating evidence;

11

fabricating inculpatory evidence; conducting improper identification procedures; concealing or withholding exculpatory evidence; tampering with or manufacturing evidence; and fabricating incriminating statements from witnesses, suspects, and arrestees.

Resp. at 25-26. Although, of these alleged policies or customs, only three appear to apply to Plaintiffs (fabricating inculpatory evidence[3]; concealing or withholding exculpatory evidence; and, possibly, tampering with or manufacturing evidence as alleged in Plaintiffs' claims about the co-defendants' redacted statements and engaging in coercive techniques in interviews and interrogations to obtain incriminating evidence[4]), these allegations are sufficient to proceed. Plaintiffs' Amended Complaint does not specifically allege that the Individual Defendants conducted improper identification procedures, or fabricated incriminating statements from witnesses, suspects, and arrestees, but discovery on these issue may be proper.

Plaintiffs provide a list of eight cases in the early 1990s that they argue support their allegation of a policy or custom, including one involving fabricating inculpatory evidence, concealing or withholding exculpatory evidence, or tampering with or manufacturing evidence. See Am. Compl. ¶¶ 82a (describing a conviction "based on misconduct by homicide detectives including tampering with evidence . . . and numerous other actions that denied [the plaintiff] a fair trial."). The other seven cases included in Plaintiffs' Amended Complaint focus on coercive interrogation techniques. Am. Compl. ¶¶ 82b-h. Plaintiffs allege a specific policy of coercion and abuse of witnesses. Am. Compl. ¶¶ 83-84. Although Plaintiffs point to three court-ordered injunctions prohibiting the City from engaging in unconstitutional behavior (Am. Compl. ¶ 85

---

[3] While the City argues that Plaintiffs did not raise an allegation of fabrication of inculpatory evidence in their Amended Complaint (Reply at 4), the pleadings taken in a light most favorable to Plaintiffs could be read to include this allegation.

[4] Read liberally, Plaintiffs' Amended Complaint may raise allegations of coercion, but in the context of plea negotiations rather than investigations and interrogations. Am. Compl. ¶¶ 62-73. The alleged policy of coercion could include allegations of coercive plea deals, so this Court is satisfied that Plaintiffs' allegations were pleaded with enough specificity on this issue.

(pointing to cases involving unlawful arrest and detention, police sweeps, and unlawful stops and searches)), the City argues those behaviors are unrelated to the alleged constitutional violations at issue here.

Plaintiffs allege that the City was put on notice of the alleged violations of defendants' constitutional rights when an investigative report was conducted and published by the *Philadelphia Inquirer* in 1977, and that the City was therefore deliberately indifferent to those alleged violations by failing to adequately address them. Am. Compl. ¶¶ 79-81. Although Plaintiffs do not present any binding Third Circuit precedent supporting their argument that the 1977 report was temporally related to the events of Plaintiffs' convictions two decades later, or that a twenty-year-old report would have put the City on notice of the alleged policy or custom of unconstitutional practices, the Court will give Plaintiffs the opportunity to prove these allegations and the connection between the alleged policy and the underlying constitutional violations. Finally, Plaintiffs point to a case finding that a narcotics squad operating out of the Philadelphia Police Department engaged in "widespread unconstitutional practices," including practices similar to those alleged used against Plaintiffs. Am. Compl. ¶ 86-87.

All told, the allegations contained in the Amended Complaint that relate to a pattern, policy, or custom of fabricating inculpatory evidence, concealing or withholding exculpatory evidence, or tampering with or manufacturing evidence, beyond those specific to Plaintiffs, are as follows:

- The Wright case alleging "misconduct by homicide detectives including the tampering with evidence, coercive witness interrogation, planting evidence and numerous other actions that denied [the plaintiff] a fair trial" (Am. Compl. ¶ 82a);

- Allegations that a narcotics squad had engaged in "widespread unconstitutional practices, including fabrication of evidence, unlawful search and arrest warrants, concealment of

13

evidence, false allegations of criminality, fabricating and planting evidence, coercive and physically abusive interrogations, and theft;" (id. ¶ 86);

- Allegations that the Philadelphia Police Department "had a practice, policy, and custom of: . . . fabricating and planting evidence, . . . concealing and/or failing to disclose exculpatory evidence[.]" (id. ¶ 88a);

- Allegations that the City, "by and through its final policy makers," engaged in a policy or custom of "unconstitutional conduct in homicide and other criminal investigations" including "fabricating evidence; . . . tampering with evidence; . . . concealing and/or withholding exculpatory evidence; and failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to arrest and prosecute" (id. ¶ 103); and

- Allegations that the City had "actual or constructive notice" of the alleged policy or custom (id. ¶ 104).

These allegations consist of a case involving similar allegations; a comprehensive report regarding similar violations by a narcotics squad; and allegations of wrongdoing which may show a specific pattern of behavior. These allegations may support an inference that the City's decisionmakers were aware of or directed the alleged custom. Taking the facts alleged in the Amended Complaint as true, Plaintiffs have therefore adequately pleaded a § 1983 Monell claim based on a custom of unconstitutional behavior.

  **B.** **The Alleged Failure to Train**

  In order to show municipal liability due to a failure to train, Plaintiffs must show "whether (1) municipal policymakers know that employee will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong

choice by an employee will frequently cause deprivation of rights." Coward v. City of Philadelphia, 546 F. Supp. 3d 331, 335 (E.D. Pa. 2021) (Rufe, J.). A municipality's alleged failure to train its police officers only rises to a constitutional violation when that failure "amounts to deliberate indifference to the rights of persons with whom the police came into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "[T]he identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." City of Canton v. Harris, 489 U.S. 378, 391 (1989); see also Harris v. City of Philadelphia, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016) (Kelly, J.).

Plaintiffs allege that the City, through the Philadelphia Police Department, failed to properly train its employees by failing to appropriately discipline officers, failing to train officers "with respect to the constitutional limitations on their . . . powers," ignoring systemic patterns of police misconduct, and failing to sanction of discipline officers who were aware of other officers' misconduct. Am. Compl. ¶¶ 88b-e. Plaintiffs also allege that the City was "deliberately indifferent to the need to train, supervise, and discipline police officers." Id. ¶ 89. The constitutional violations alleged in the Amended Complaint include fabricating inculpatory evidence, concealing or withholding exculpatory evidence, or tampering with or manufacturing evidence. Id. ¶¶ 82, 86, 88, 103-04. Taking the facts alleged in the Amended Complaint in a light most favorable to the Plaintiffs, it is reasonable to infer that the City would have known that its employees would face situations where the proper handling of evidence was needed, that the City had a history of failing to adequately train its employees on proper evidentiary and investigative practices, and that those failures would result in the very deprivation of rights that the Plaintiffs now allege. It is therefore reasonable to infer, based on the pleadings, that the Plaintiffs have adequately stated a Monell claims based on failure to train.

## VI. CONCLUSION

Plaintiffs allege widespread misconduct by the City and the Philadelphia Police Department and also allege separate wrongdoing by the Individual Defendants against Plaintiffs. Taken in a light most favorable to Plaintiffs, the facts as alleged in the Amended Complaint are sufficient to support the conclusion or inference that Plaintiffs' constitutional rights were violated and that the decisionmakers of the City or Philadelphia Police Chief were aware of or directed the alleged custom that allowed these violations to take place. Plaintiffs have therefore adequately alleged a <u>Monell</u> claim against the City. Plaintiffs' claim of damages against the City have also been adequately alleged. The City's Motion to Dismiss shall be **DENIED**.

An appropriate Order follows.