**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRENILE GAINEY, A/K/A NAREE ABDULLAH, JARMAINE TRICE, A/K/A ERIC GREEN,** *Plaintiffs,* <br><br> **v.** <br><br> **CITY OF PHILADELPHIA, YVONNE RUIZ, JOSEPH WALSH, ROBERT SNELL, ANTHONY TOMAINO, MICHAEL GROSS, WORRELL, OFFICERS JOHN DOE(S), Individually and as employees for the City of Philadelphia,** *Defendants.* | **CIVIL ACTION** <br><br> **NO. 22-4143** |

<u>**MEMORANDUM RE: MOTIONS TO DISMISS**</u>

Baylson, J.                                                    November 29, 2023

In connection with their 1996 convictions for second degree murder, Plaintiffs Naree Abdullah and Jarmaine Trice[1] now bring this § 1983 suit against the City of Philadelphia and several individual city employees.  As relevant here, individual Defendants include Assistant District Attorney Yvonne Ruiz, Detective Anthony Tomaino, and Officer Joseph Walsh.  Defendant Ruiz, as well as Defendants Walsh and Tomaino ("Officer Defendants"), move to dismiss all counts against them.  For the following reasons, both Motions will be **GRANTED with prejudice**.

---

[1] Plaintiff Abdullah previously went by the name Grenile Gainey.  Plaintiff Trice previously went by the name Eric Greene.

## I.      FACTUAL BACKGROUND

### A.      The Robbery

On December 11, 1993, a group of men robbed a grocery store in North Philadelphia.  Am. Compl. (ECF No. 13) at ¶ 12.  During the robbery, one participant shot and killed the store's owner. Id. ¶ 13.  Three individuals—Julius Jenkins, Atil Finney, and Gregory Womack—eventually confessed to the robbery, identifying Jenkins as the shooter and placing both Abdullah and Trice at the scene of the crime.  Id. ¶¶ 17, 19.  Demond Jackson, who did not participate in the crime but was with the group before and after, also gave a statement to the police that aligned with those confessions, although each account differed significantly.  Id. ¶¶ 18–19.  Based on those statements, the Commonwealth charged Jenkins with first-degree murder, and charged Abdullah, Trice, Finney, and Womack with second-degree murder.  Id. ¶ 20.

### B.      The Trial

All five alleged robbery participants were jointly tried in 1996, despite Trice's attempt to sever his case from his co-defendants.  Id. ¶¶ 1, 22, 51.  Ruiz prosecuted the case, and Tomaino and Walsh—who had conducted the investigation into the robbery—both testified against Abdullah and Trice.  Id. ¶¶ 8, 38–40.  Defendants' actions leading up to, during, and after trial are at the heart of this § 1983 dispute.

#### i.      Ruiz Allegedly Elicits False Testimony from Jackson

Plaintiffs allege that, at trial, Ruiz knowingly elicited false testimony from multiple witnesses, including Walsh and Tomaino.  Id. ¶¶ 27, 38–42.  First, Plaintiffs allege Ruiz improperly attempted to salvage Demond Jackson's testimony, which defense counsel had impeached as inconsistent with Jackson's original statement to the police.  Id. ¶ 27.  Specifically, Plaintiffs contend that Ruiz elicited rebuttal testimony from Jackson in which Jackson attributed his

inconsistencies to nerves, given that it was Jackson's first time testifying in a homicide trial. Id. In actuality, Jackson had previously testified in a homicide trial less than a year earlier, a fact that Ruiz allegedly knew.  Id. ¶ 28.

ii.    Ruiz Allegedly Elicits False Testimony from Walsh and Tomaino

Second, Plaintiffs allege that Ruiz elicited false testimony from Walsh and Tomaino.  Both Defendants, Plaintiffs contend, knowingly lied in rebutting Jackson's further testimony that he had been shot during a different bar robbery later that same evening.  Id. ¶¶ 37–40.[2]  Walsh testified that he had thoroughly investigated the second incident but had been unable to find any reports of a bar robbery.  Id. ¶¶ 38, 40.  Likewise, Tomaino testified that he had searched for, but not found, any reports about a bar robbery.  Id. ¶ 42.  Ruiz herself also allegedly maintained throughout discovery and at trial that she "had police officers looking to see if there were any [incident reports] for that day it occurred, and they couldn't find anything there."  Id. ¶ 41.

Contrary to that testimony, however, Plaintiffs' review of Ruiz's case file during post-conviction proceedings revealed several incident reports related to the bar robbery.  Id. ¶ 43.  It further revealed two alternative suspects and several additional witnesses.  Id. ¶¶ 44–47.  Those additional case files, Plaintiffs contend, demonstrate that (1) Ruiz knowingly elicited false testimony from Walsh and Tomaino, (2) Walsh and Tomaino knowingly falsely testified, and (3) Walsh, Tomaino, and Ruiz had conspired to conceal these files, which constituted Brady material. Id. ¶¶ 75, 91.

---

[2] As Officer Defendants note, the significance of this testimony is less than clear. ECF No. 36 at 8.  Plaintiffs appear to assert, without explaining, that these reports may have demonstrated that Jackson's testimony was coerced or given in exchange for the Commonwealth abstaining from prosecuting Jackson for the bar or grocery store robbery.  ECF No. 37-1 at 6; Am. Compl. ¶ 49. If anything, however, Officer Defendants' testimony regarding the absence of reports regarding this second bar robbery may have undermined Jackson's testimony that this bar robbery occurred (and thus Jackson's credibility).

iii.   Ruiz Allegedly Introduces Improperly Redacted Statements

Plaintiffs also direct the Court to Ruiz's alleged misconduct with respect to the pre-trial confessions from Jenkins, Finney, and Womack.  Id. ¶¶ 51–58.  As noted above, the three co-defendants submitted statements that also inculpated Abdullah and Trice.  Id. ¶ 19.  But Jenkins, Finney and Womack did not actually testify at trial.  Id. ¶ 51. And instead of omitting those statements or severing each defendant's case, the trial judge asked Ruiz to simply redact those confessions to remove any prejudicial references to Abdullah and Trice.  Id. ¶ 52.  Ruiz did so, but allegedly redacted the various statements inconsistently, after which she used them against both Abdullah and Trice to corroborate Jackson's inculpating testimony.  Id. ¶¶ 53–55.  That evidence, Plaintiffs contend, heavily contributed to their allegedly wrongful convictions.  Id. ¶ 56.

**C.   Post-Trial Proceedings**

In the ensuing decades, Abdullah and Trice challenged their convictions on direct appeal and through post-conviction proceedings.  Id. ¶¶ 59–62.  Abdullah did so with two principal arguments.  First, he asserted that redacted statements, like those introduced at trial, violate the Confrontation Clause under Bruton v. United States, 391 U.S. 123 (1968) and its progeny.  Id. ¶¶ 57, 60, 62.  In particular, he argued that Gray v. Maryland, 523 U.S. 185 (1998)—which the Supreme Court decided while Abdullah's case was on direct appeal—"squarely [extended Bruton to] redacted statements precisely like the ones introduced" by Ruiz at Plaintiffs' trial.  Id. ¶ 60. Second, Abdullah argued that Defendants' use of false testimony, which was allegedly known to be false by these Commonwealth representatives, was a denial of due process under Napue v. People of State of Ill., 360 U.S. 264 (1959).  Id. ¶¶ 35, 70.  Abdullah's Bruton/Gray argument eventually persuaded the Third Circuit, which granted a summary reversal of Judge Ditter's denial of post-conviction relief on November 24, 2020, followed by a grant of habeas relief by Judge

Pratter on April 8, 2021.  Id. ¶¶ 60, 62; see also Abdullah v. Warden Dallas SCI, et al, No. 16-4149, ECF No. 125 (3d. Cir. 2020); Abdullah v. Warden Dallas SCI, et al, No. 06-3885, ECF No. 57 (E.D. Pa. 2021).   In 2022, Trice, relying on "Abdullah's relief and their identical circumstances," also had his conviction vacated on Brady and Napue grounds, id. ¶ 70,  although the Amended Complaint does not identify the precise court, order or judge vacating that conviction, id.

Throughout post-conviction proceedings, Ruiz allegedly "remained silent," "opposed relief," id. ¶ 36, and "violated Brady v. Maryland by withholding multiple pieces of favorable evidence" for "nearly three decades," id. ¶ 58.  That said, the Amended Complaint does not allege further facts detailing how Ruiz went about opposing relief, or in what capacity Ruiz did so.

Following the respective grants of habeas relief for Plaintiffs in 2021 and 2022, Plaintiffs allege that certain members of the Philadelphia DA's office (although not Ruiz in particular) failed to release or retry the Plaintiffs within 120 days, and then "constructively coerced" Plaintiffs to accept new plea deals which led to prison sentences in the Court of Common Pleas for less than time already served, rather than wait for a new trial.  Id. ¶¶ 63–68, 70–73.

Those 2022 guilty pleas for robbery and criminal conspiracy were followed by the present suit.

## II.      PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on October 14, 2022.  ECF No. 1.  On December 7, 2022, Defendant City of Philadelphia filed a Motion to Dismiss for Failure to State a Claim.  ECF No. 8.  Plaintiffs then filed an Amended Complaint on January 11, 2023, ECF No. 13, bringing the following six claims under 42 U.S.C. § 1983:

- **Count I**: Deprivation of liberty without due process of law and denial of a fair trial under the Fourteenth Amendment, against all individual

Defendants, for deliberately deceiving, concealing and/or suppressing material evidence;

- **Count II**: A civil rights conspiracy claim, against all individual Defendants, for agreeing to deprive Plaintiffs of their Fourteenth Amendment rights to due process of law and a fair trial;

- **Count III**: A failure to intervene claim, against all individual Defendants, for failing at trial and post-conviction proceedings to prevent the deprivation of Plaintiffs' Fourteenth Amendment rights to due process and a fair trial;

- **Count IV**: A municipal liability claim against the City of Philadelphia for the Philadelphia Police Department's pattern, practice, or custom of unconstitutional conduct in criminal investigations;[3]

- **Count V**: Damages against all Defendants;

- **Count VI**: Punitive Damages against all individual Defendants.

On July 31, 2023, Officer Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim.  ECF No. 36.  Plaintiffs responded on August 14, 2023. ECF No. 37.  On August 16, 2023, Ruiz also moved to dismiss Plaintiffs' Amended Complaint. ECF No. 40.  Plaintiffs responded on September 29, 2023, ECF No. 44, and Ruiz filed a reply on October 19, 2023, ECF No. 47.  These two motions to dismiss are presently before the Court.

## III.        LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[3] Defendant City of Philadelphia moved to dismiss the Amended Complaint, which this Court denied with respect to Counts IV and V on April 24, 2023.  ECF Nos. 15, 19.

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

The Court in <u>Iqbal</u> explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. <u>Id.</u> at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 555); <u>see</u> <u>also</u> <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (citing <u>Twombly</u>, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

## IV.     SUMMARY OF ARGUMENTS

### A.     Officer Defendants' Motion to Dismiss

#### i.     <u>Count I — Fourteenth Amendment Claim</u>

Officer Defendants contend that this Court should dismiss Plaintiffs' Fourteenth Amendment claim—in which Plaintiffs assert that "the defendant officers and/or assistant district attorneys deliberately deceived counsel and the court by concealing and/or suppressing relevant and material evidence," Am. Compl. ¶ 91—for three reasons. ECF No. 36 at 6.

First, Officer Defendants argue Plaintiffs have failed to allege that either Walsh or Tomaino personally participated in any misconduct, as the Amended Complaint does not specifically allege that either Defendant ex-ante knew about the allegedly concealed incident

reports.  Id. at 6–7.  Second, Officer Defendants assert they are entitled to qualified immunity for any alleged Brady violation because (1) a police officer's constitutional obligation to disclose exculpatory materials was not clearly established in 1996; and (2) even if that obligation was clearly established, and even if Officer Defendants had in fact known about the concealed reports, "the police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutors."  Id. at 7 (citing Yarris v. Cty. Of Del., 465 F.3d 129, 141 (3d Cir. 2006)).  Third, Officer Defendants contend they are entitled to absolute immunity for any allegedly inaccurate testimony at trial regarding this bar robbery.  Id. at 6.

Plaintiffs counter that the Amended Complaint sufficiently alleges Officer Defendants knew of the bar robbery incident prior to trial.  Specifically, Plaintiffs contend their discovery of the allegedly concealed incident reports within Ruiz's files (during post-conviction proceedings) demonstrate that Walsh and Tomaino—who "oversaw collecting the information about the other robbery"— necessarily "knew it existed when they testified to the contrary."  ECF No. 37-1 at 14–15.  Further, Plaintiffs contend Officer Defendants are not entitled to qualified immunity here because, at the time of this 1996 trial, it was already "self-evident that a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'"  Id. at 18 (citing to Halsey v. Pfeiffer, 750 F.3d 273, 293 (3d Cir. 2014) (quotations omitted)).  Likewise, while Plaintiffs acknowledge there is "a broad grant" of absolute "testimonial immunity from civil damages for all persons, governmental or otherwise," id. at 20, Plaintiffs nonetheless contend the "law does not support a finding that defendants may withhold" exculpatory evidence "and upon perjuriously testifying to the above, . . . shield themselves with a cloak of absolute immunity," id.

ii.    <u>Count II — Conspiracy</u>

Officer Defendants next assert Plaintiffs have failed to plausibly allege a civil rights conspiracy claim under § 1983. They do so for two reasons. First, Officer Defendants contend the "Amended Complaint includes no [] allegations as to how, why, or when the alleged conspiracy came into existence, let alone sufficient factual allegations to even discern who was a party of such conspiracy." ECF No. 36 at 13. Second, Officer Defendants argue Plaintiffs have failed to allege a viable underlying constitutional violation against either Walsh or Tomaino, as is necessary to sustain a § 1983 conspiracy claim. <u>Id</u>.

Plaintiffs counter only that the Amended Complaint does in fact allege "defendant officers and Assistant District Attorney(s) were deliberately deceptive by concealing and/or suppressing critical evidence and thus violated the plaintiff's right to due process of law and a fair trial," and that "the officers and the prosecution worked in concert" to do so. ECF No. 37-1 at 22–23.

iii.    <u>Count III — Failure to Intervene</u>

Officer Defendants lastly contend that Plaintiffs' failure-to-intervene claim must also fail for two reasons. First, Officer Defendants argue that "[e]ntirely absent from Plaintiffs' Amended Complaint are basic details to support a failure-to-intervene claim, such as *which* defendants failed to intervene, *how* they failed to prevent violations, *who* (if anyone) knew about a violation as it was occurring, and *what* position they were in to act." ECF No. 36 at 17. Second, Officer Defendants argue they are nonetheless entitled to qualified immunity for any alleged failure to intervene, as the Third Circuit has "yet to definitively recognize the viability of a failure-to-intervene theory outside of the excessive-force context." <u>Id.</u> at 18.

Plaintiffs do not directly respond to either argument, other than to say that all individual Defendants "worked in concert to conceal this information from the time of investigation <u>until the release of Plaintiffs</u>."  ECF No. 37-1 at 23 (emphasis added).

### B.    Defendant Ruiz's Motion to Dismiss

Defendant Ruiz asserts only one argument in moving to dismiss each count against her. Specifically, she contends that each of Plaintiffs' claims relate to her actions while functioning as an "advocate for the Commonwealth," which entitles her absolute immunity under <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976).  ECF No. 40-1 at 2 (citing to <u>Imbler</u>, 424 U.S. at 431) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under §1983.""))

While Plaintiffs, again, "do not dispute that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial," ECF No. 44-1 at 12, they nonetheless contend that Ruiz's alleged efforts to conceal relevant evidence were in her "investigative or administrative capacity," and that "[a]bsolute immunity is not applicable where in court activity is directly tied to the investigatory misconduct[.]" <u>Id</u>. Similarly, Plaintiffs contend that "a government attorney [is] not entitled to prosecutorial immunity for withholding exculpatory evidence, as well as fabricating evidence."  <u>Id.</u> at 14.

## V.    DISCUSSION

### A.  Officer Defendants' Motion to Dismiss

#### i.    Count I — Fourteenth Amendment Claim

The Court begins its analysis with Officer Defendants' contention that they are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claim.

Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Dennis v. City of Philadelphia, 19 F.4th 279, 287 (3d Cir. 2021) (citations omitted); Xi v. Haugen, 68 F.4th 824, 839 (3d Cir. 2023). Thus, it ceases to apply only when (1) a "plaintiff sufficiently allege[s] the violation of a constitutional right," and (2) that "right was 'clearly established' at the time of the official's conduct." Dennis, 19 F.4th at 287.

Before discerning whether such immunity attaches here, however, this Court must first address the parties' threshold dispute regarding the nature of the alleged violation. Only then can this Court determine whether Plaintiffs have sufficiently alleged such a violation, and if so, whether it was clearly established at the time.

### a. Plaintiffs Attempt to Assert a Deliberate Deception Claim, Not a Brady Claim

This initial dispute arises from Officer Defendants' assertion that "although phrased as a due process claim for intentional concealment and deliberate suppression of exculpatory evidence," Plaintiffs' Fourteenth Amendment claim, in reality, "ultimately seeks to impose liability on Defendants Walsh and Tomaino for failing to comply with Brady v. Maryland." ECF No. 36 at 9.

That contention is unavailing, as it runs afoul of the Third Circuit's decision in Dennis v. City of Philadelphia, where the Court made clear that a "plaintiff, as the master of the complaint, is free to choose between legal theories, and a defendant cannot create a cause of action from the fact pattern on behalf of the plaintiff." 19 F.4th at 291.

Indeed, Dennis is on all fours with the current dispute. In Dennis, a wrongfully convicted § 1983 plaintiff alleged that detective defendants had deliberately deceived prosecutors, the trial court, and criminal defense counsel by (1) concealing confessions from alternative suspects, (2)

11

falsely claiming to have found certain clothing items that inculpated the plaintiff, only to later testify the clothing was found at the plaintiff's residence but then "'disappeared' from police headquarters prior to trial," and (3) hiding a timestamped document—discovered during the detectives' investigation—that would have undermined testimony from a key alibi witness. Id. at 283–84.

In Dennis, like here, the plaintiff framed his complaint as alleging a "violation of [his] due process rights to a fair trial caused by the detectives' deliberate deception." Id. at 290. In moving to dismiss that complaint, detective defendants attempted to "recharacterize Dennis's claims simply as Brady claims," in the hopes of further arguing they were entitled to qualified immunity because "their Brady obligation was not clearly established" at the time of the detectives alleged misconduct. Id. at 290–91.

The Third Circuit rejected that reframing, expressly "declin[ing] to mischaracterize Dennis's deliberate deception claim in such a manner." Id. at 290. In so doing, the Dennis Court distinguished between a Brady claim—in which a plaintiff's due process rights are "violated by the failure to disclose exculpatory or impeachment evidence to the defense"—and a claim for deliberate deception—which "must go beyond the failure to disclose evidence and arises when imprisonment results from the knowing use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." Id. at 291. And based on that distinction, the Court concluded that Dennis was "a paradigm example" of the latter because plaintiff "not only allege[d] that the Detectives withheld exculpatory and impeachment evidence that would have supported his alibi and defense, but that they also failed to correct testimony they knew was false and concealed from the defense the evidence that revealed that trial testimony as false." Id. at 291–92.

In nearly all key respects, Plaintiffs' Fourteenth Amendment claim here mirrors that in Dennis.  Indeed, Plaintiffs' Amended Complaint expressly alleges that "defendant officers and / or defendant assistant district attorneys deliberately deceived counsel and the court by concealing and/or suppressing relevant and material evidence linking fewer than four people to the scene of the crime, evidence of alternative suspects, and undisclosed reports of crime on the same night and in the same vicinity implicating Commonwealth witnesses."  Am. Compl. ¶ 91 (emphasis added).

True, as Officer Defendants observe, the plaintiff in Dennis alleged detectives "never shared [exculpating evidence] with Dennis or the prosecutors," Dennis, 19 F.4th at 284 (emphasis added), whereas Plaintiffs here appear to allege that Ruiz was "fully aware of the evidence that supposedly had not been disclosed." ECF No. 36 at 9 n.3 (citing to Am. Compl. ¶ 43).  But, as explained in more detail below, that distinction presents a question of whether Plaintiffs have sufficiently alleged a violation here, not whether Plaintiffs' Amended Complaint alleges a particular type of violation.

Accordingly, in evaluating whether Officer Defendants are entitled to qualified immunity here, the Court does so through the lens of a deliberate deception claim, rather than a Brady claim.

> b.  *Deliberate Deception as the Basis of a Fourteenth Amendment Claim was Clearly Established by 1993*

Thus, the Court may also look to Dennis to answer whether the alleged constitutional violation here was "clearly established at the time of the detective's conduct on which the claims are based." Dennis, 19 F.4th at 292.  Dennis makes clear that it was.  As the Third Circuit explained there, although the Supreme Court "did not settle the principle that evidence in the hands of police could be imputed to the prosecutor until 1995," that principle "is separate from the right not to be framed by the use of perjured witness testimony at trial that was recognized by the Supreme Court in [Mooney v. Haloran, 294 U.S. 103 (1935)] or by the detectives' own perjured testimony at trial

recognized . . . in [Curran v. Delaware, 259 F.2d 707, 713 (3d Cir. 1958)]." Id. at 290.  And because the latter two principles control in deliberate deception cases, id. at 292, Plaintiffs constitutional right to be free from such deliberate deception was necessarily established before Officer Defendants' alleged violations here.

#### c. *Plaintiffs Have Not Sufficiently Alleged Deliberate Deception Violations*

Since deliberate deception claims were clearly established as violations of an individual's constitutional right to a fair trial, the Court must lastly ask whether the Amended Complaint sufficiently alleges such violations here.  Id. at 287, 291.  Critically, allegations of "a generalized notion that deliberate deception violated due process will not do."  Id. at 291.  Instead, Plaintiffs' must allege "not only [] that the Detectives withheld exculpatory and impeachment evidence that would have supported [Plaintiffs'] alibi and defense," but also that they "failed to correct testimony they knew was false and concealed from the defense the evidence that revealed that trial testimony as false. Id. at 291–92.

Plaintiffs have not made the requisite showing.  First and foremost, Plaintiffs' allegations of false testimony, in isolation, cannot sustain their deliberate deception claim against Walsh and Tomaino.  Simply put, "[w]itnesses, including public officials and private citizens, are immune from civil damages based upon their testimony."  Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) (citing Briscoe v. LaHue, 460 U.S. 325, 341, 345–46 (1983)).

True, the Supreme Court has made clear that absolute immunity does not "extend[] to all activity that a witness conducts" outside of the courtroom.  Rehberg v. Paulk, 566 U.S. 356, 370 n.1 (2012).  But that immunity only falls away if "plaintiff can make out the elements of his § 1983 claim without resorting to" to the allegedly false testimony.  Coggins v. Buonora, 776 F.3d 108, 113 (2d Cir. 2015).  Put differently, "[i]f the claim exists independently of the [] testimony,

it is not 'based on' that testimony," and therefore not entitled to absolute immunity.  Id.  So the perjury must be "but one additional step" taken to push the case forward.  Adamou v. Doyle, 2017 WL 1230541, at *2 (S.D.N.Y. Jan. 12, 2017).

Here, however, the Court cannot find allegations of deception apart from Defendants' allegedly false trial testimony.  Underlying that absence are two key inferences Plaintiffs ask this Court to draw.  First, Plaintiffs ask this Court to infer that Officer Defendants knew of the relevant incident reports, ex-ante. ECF No. 37-1 at 14–15.  Second, and more importantly, Plaintiffs ask this Court to find that Ruiz had access to the relevant reports prior to trial.  Id. (citing to Am. Compl. ¶ 43).  The first allegation presents a sufficiency issue.  The second creates an inescapable inconsistency in Plaintiffs' pleadings.

Knowledge is, of course, a prerequisite to deception.  Dennis, 19 F.4th at 289–90.  If Officer Defendants were not aware of these incident reports prior to trial—as their trial testimony unequivocally indicates—they could not have deliberately deceived criminal defense counsel and the trial court by giving that trial testimony.  And, as Defendants note, the Amended Complaint here simply does not allege "Walsh or Tomaino themselves knew about these incident reports at the time of Plaintiffs' trial." Off. Def. Mot. Dismiss. (ECF No. 36) at 7.  Instead, Plaintiffs essentially ask this Court to infer Officer Defendants' ex-ante knowledge from the combination of (1) Walsh and Tomaino's investigative responsibilities and (2) Plaintiffs' post-conviction discovery of the reports within Ruiz's homicide file.  ECF No. 37-1 at 14-5. Even viewing the allegations in the light most favorable to Plaintiffs, the Court is skeptical, however, that these allegations generate "more than a sheer possibility" of ex-ante knowledge, and thus some later

intentional deception.  Iqbal, 556 U.S. at 678.  So that pleading failure alone would be reason enough to dismiss Plaintiffs' claim here.[4]

Regardless, Plaintiffs' latter allegation—that Ruiz herself obtained the incident reports prior to trial—independently undermines Plaintiffs' assertions that Officer Defendants engaged in some type of overt, pretrial deception.  Said differently, disclosure to the prosecution belies any conclusion that, to the extent Officer Defendants knew of the reports, they attempted to hide that information from the prosecution.  That is precisely why, for Brady claims, "police satisfy their obligation 'when they turn exculpatory evidence over to the prosecutors.'"  Yarris, 465 F.3d at 141.  Simply put, disclosure is antithetical to deception.

Thus, Defendants are ultimately correct that this case is distinguishable in a key respect from Dennis, where defendant detectives "took the only copy of [exculpating evidence] and never shared it with Dennis or the prosecutors."  Dennis, 19 F.4th at 284 (emphasis added).   Here, by contrast, Plaintiffs expressly allege that a "[p]ost-conviction inspection of Defendant Ruiz's file . . revealed the existence of incident reports regarding the bar robbery that the individual defendants previously claimed to have no information about."[5]  Am. Compl. ¶ 43 (emphasis added).  That allegation directly undermines the conclusion these reports were "never shared" with Ruiz, and contradicts any argument that Officer Defendants somehow hid this information from the

---

[4] Notably, and contrary to Plaintiffs' allegations that Officer Defendants testified at trial to a lack of evidence about a second bar robbery, the Amended Complaint omits any allegation that Officer Defendants affirmatively denied the existence of alternative suspects or additional contradictory witness statements.  That omission further weakens Plaintiffs' claim against Officer Defendants, as it undercuts the notion that Officer Defendants knew of and deliberately deceived prosecutors, the trial judge, and defense counsel about this later-discovered evidence.

[5] The Amended Complaint likewise alleges that "the individual defendants," in toto, intentionally failed "to produce Brady material related to the investigation of the bar robbery and/or correct the false testimony of Jackson," and that "all individual defendants" attempted to deliberately deceive "counsel and the court by concealing and/or withholding relevant and material evidence."  Id. at ¶¶ 48, 91.

prosecution in an "effort to secure [] a conviction." <u>Dennis</u>, 19 F.4th at 292.  Plaintiffs simply do not allege such intra-governmental concealment, or even provide sufficient surrounding facts to plausibly infer it.  To the contrary, the Amended Complaint repeatedly alleges that <u>all</u> individual Defendants acted "in concert" to conceal this evidence.  Am. Compl. ¶¶ 11, 91, 95.[6]

Further fatal to Plaintiffs' claim, the only cases to which Plaintiffs cite regarding deliberate deception claims involve the <u>unilateral</u> concealment, fabrication, or destruction of evidence by law enforcement officials.  ECF No. 37-1 at 13 (citing to <u>Black v. Montgomery City</u>, 835 F.3d 358, 370 (3d Cir. 2016); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 294, 297 (3d Cir. 2014); <u>Limone v. Codon</u>, 372 F.3d 39, 45 (1st, Cir. 2004); <u>Castellano v. Fragozo</u>, 352 F.3d 939, 958 (5th Cir. 2003); <u>Zahrey v. Coffey</u>, 221 F.3d 342, 349-50 (2d Cir. 2000); <u>Crawford v. Commonwealth of Pennsylvania</u>, 2003 WL 22169372, at *6 (M.D. Pa. Sept. 12, 2003) ("The complaint alleges perjured testimony by police officers at trial, as in <u>Briscoe</u>, <u>but it also alleges</u> conspiracy, fabrication, and concealment of evidence which occurred years before Plaintiff was arrested or tried") (emphasis added); <u>cf Crosland v. City of Philadelphia</u>, No. CV 22-2416, 2023 WL 3898855, at *2, 6 (E.D. Pa. June 8, 2023) (denying a similar motion to dismiss where "detectives <u>never told prosecutors</u> or defense counsel about the information in their possession" and "withheld [exculpatory] evidence [] from defense counsel, <u>prosecutors</u>, and the court") (emphasis added).  Plaintiffs point to no authority for the proposition that a "claim exists independently" against police officers for failing to disclose relevant material directly to a criminal defendant or to the court, after having already disclosed that evidence to the prosecution.  This Court cannot create that cause of action here.

---

[6] Indeed, in Plaintiffs' response brief, they expressly state that "[i]t is true that Plaintiffs claim is not that the defendant officers deliberately deceived prosecutor. Rather, Plaintiffs allege that defendant officers and prosecutor conspired together to deliberately deceive Plaintiffs and their counsel." ECF No. 37-1 at 19.  But, for the reasons explained below, those cursory assertions also cannot  support Plaintiffs' conspiracy claim.

Accordingly, this Court concludes that Plaintiffs have failed to "sufficiently allege[] the violation of a constitutional right" by Officer Defendants, Dennis, 19 F.4th at 291, thus entitling Officer Defendants to qualified immunity on this claim.[7]

---

[7] While this Court noted in denying Defendant City of Philadelphia's Motion to Dismiss that "Plaintiffs have alleged that the Individual Defendants withheld evidence about police reports, alternative suspects, and witnesses; falsely testified about the existence of those reports; and manufactured evidence," and that "[t]aking the facts alleged in the Amended Complaint as true, Plaintiffs have shown a number of constitutional violations which adequately support a § 1983 claim of deprivation of liberty without due process of law and denial of a fair trial," Abdullah v. City of Philadelphia, No. CV 22-4143, 2023 WL 3059862, at *5 (E.D. Pa. Apr. 24, 2023), this Court also expressly noted that it was not "ruling definitively on the issue" of immunity for individual Defendants, id. at *5 n.2. This Court also did not specify against which individuals Defendants Plaintiff may have alleged a constitutional violation. Id. Indeed, "whether [] individual officers might be protected by qualified immunity is a separate and distinct question that does not bear on the Court's treatment of Plaintiff's claims against the City." Fullman v. City of Philadelphia, No. CV 10-1536, 2016 WL 7383194, at *9 (E.D. Pa. Dec. 20, 2016), aff'd in part, vacated in part on other grounds, 722 F. App'x 242 (3d Cir. 2018); see also Fields v. City of Philadelphia, 862 F.3d 353, 362 (3d Cir. 2017) (granting qualified immunity to defendant officers but remanding on Monell claims); Veneklase v. City of Fargo, 78 F.3d 1264, 1270 (8th Cir.1996) (similar); Cunningham v. Gates, 229 F.3d 1271, 1285–86 (9th Cir. 2000) (similar); Powell v. Pauley, No. 415CV04013SLDJEH, 2015 WL 6971615, at *3 (C.D. Ill. Nov. 10, 2015) ("a jury could find the individual Defendants committed a constitutional violation, but nevertheless find that the individual officers were not liable due to qualified immunity. In such a case, there would be no inconsistent verdict in finding the Defendant City liable under Monell, notwithstanding the lack of liability on the part of individual officers, because the jury would have found a constitutional violation."); Thayer v. Chiczewski, 705 F.3d 237, 251 (7th Cir. 2012) (affirming summary judgment for the individual defendants on qualified immunity grounds, but remanding the plaintiff's Monell claim because municipalities are not eligible for qualified immunity); Thomas v. Cook Cnty. Sheriff's Dep't, 604 F.3d 293, 305 (7th Cir. 2010) ("[A] municipality can be held liable under Monell, even when its officers are not, unless such a finding would create an inconsistent verdict."); but see Morris v. Phila. Hous. Auth., No. 10-cv-5431, 2011 WL 3273475, at *14 (E.D. Pa. July 29, 2011) (Baylson, J.) ("[A] municipality may not incur Monell liability if there is no underlying constitutional violation or injury."), aff'd, 487 Fed. App'x 37 (3d Cir. 2012);); Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("neither Monell ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm").

ii.   Count II — Conspiracy

Plaintiffs' conspiracy claim against Officer Defendants also cannot survive.  As Officer Defendants correctly assert, the Amended Complaint simply does not include "allegations as to how, why, or when the alleged conspiracy came into existence, let alone sufficient factual allegations to even discern who was a party of such conspiracy."  ECF No. 36 at 13.  While the Amended Complaint vaguely alleges that "individual defendants . . . agreed among themselves and with other individuals, to act in concert to deprive Plaintiffs of their clearly established Fourteenth Amendment rights," Am. Compl. ¶ 95, such threadbare assertions cannot sustain a § 1983 conspiracy claim. Twombly, 550 U.S. at 556–57 (finding that, "[w]ithout more, parallel conduct does not suggest conspiracy[.]").

Further, to the extent Plaintiffs allege that Officer Defendants and Ruiz conspired for the purpose of coordinating Officer Defendants allegedly false trial testimony, the Supreme Court has squarely rejected any such claim on absolute immunity grounds. See Rehberg, 566 U.S. at 369 (holding that absolute immunity for testifying policer officers "may not be circumvented by claiming that a [] witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.").

iii.   Count III — Failure to Intervene

Plaintiffs' failure-to-intervene claim fares no better.  As Officer Defendants correctly argue, "[e]ntirely absent from Plaintiffs' Amended Complaint are basic details to support a failure-to-intervene claim, such as *which* defendants failed to intervene, *how* they failed to prevent violations, *who* (if anyone) knew about a violation as it was occurring, and *what* position they were in to act."  ECF No. 36 at 17.  Moreover, as this Court recently recognized, "[t]he Third Circuit

has yet to extend this theory of liability" beyond the "unprovoked beatings" context, Brown v. Harris, 2022 WL 824236, at *5 (E.D. Pa. Mar. 18, 2022) (Baylson, J.).  While it is true that certain courts, including this Court, have entertained such failure-to-intervene claims in the false arrest and false imprisonment context, id., Plaintiffs do not allege any such violations here.  See Ogrod v. City of Philadelphia, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022).  Thus, Officer Defendants are also entitled to qualified immunity as to Plaintiffs' failure-to-intervene claim.

### B.  Defendant Ruiz's Motion to Dismiss

Defendant Ruiz, as noted above, argues that Plaintiffs solely target Ruiz's conduct while functioning as an "advocate for the Commonwealth," entitling Ruiz to absolute immunity under Imbler.  ECF No. 40-1 at 2.  For the reasons explained immediately below, the Court agrees.

### i.    Count I — Fourteenth Amendment Claim

Prosecutors are entitled to absolute immunity for all actions they perform while serving in a "quasi-judicial" role.  Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992).  To discern when a prosecutor is acting in such a role, courts look to the "nature of the function performed, not the identity of the actor who performed it[.]"  Hughes, 242 F.3d at 125.  Thus, if a prosecutor's acts are "intimately associated with the judicial phase of the criminal process," Imbler, 424 U.S. at 430–31, absolute immunity precludes liability under § 1983.  That immunity falls away, however, for "administrative or investigatory action[] unrelated to initiating and conducting judicial proceedings."  Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008).

The "investigatory action" inquiry is a holistic one, but by and large, "prosecutors are most likely functioning in a 'quasi-judicial' capacity [] between indictment and dismissal, acquittal, or conviction."  Id. at 211.  As such, absolute immunity routinely extends to a prosecutor's decision to "withhold[] exculpatory evidence" during discovery and at trial.  Douris v. Schweiker, 229 F.

Supp. 2d 391, 399 (E.D. Pa. 2002) (Baylson, J.); <u>see also</u> <u>Savage v. Bonavitacola</u>, No. CIV.A.03-0016, 2005 WL 568045, at *12 (E.D. Pa. Mar. 9, 2005); <u>Roberts v. Toal</u>, No. 94–0608, 1995 WL 51678, *2 (E.D.Pa. Feb. 8, 1995).

This case is no exception. At bottom, the Amended Complaint here alleges that Ruiz was aware of potentially exculpatory evidence—including incident reports related to Demond Jackson's second bar robbery, the identity of alternative suspects, and witness statements that may have contradicted certain inculpating confessions—but nonetheless decided to withhold that information from defense counsel. Am. Compl. ¶¶ 48-49, 75. But Ruiz's decision to do so, even if magnified by the allegedly false testimony from Jackson, Walsh, and Tomaino, unequivocally occurred while she was acting as an advocate for the Commonwealth.

Nothing in the Amended Complaint indicates Ruiz herself independently investigated or discovered this information, let alone that Ruiz did so prior to the indictments in this case. <u>Odd</u>, 538 F.3d at 211; <u>cf</u> <u>Weimer v. Cnty. of Fayette, Pennsylvania</u>, 972 F.3d 177, 189 (3d Cir. 2020). Nor does the Amended Complaint allege conduct that "by virtue of [its] egregiousness . . ., fall wholly outside the prosecutorial role," such as "deliberately <u>destroying</u> exculpatory evidence." <u>Id.</u> (emphasis added); <u>see also</u> <u>Munchinski v. Solomon</u>, 747 F. App'x 52, 58 (3d Cir. 2018) (non-precedential) ("the prosecutor is entitled to absolute immunity from suit—even when he intentionally withholds evidence that is exculpatory under <u>Brady</u>"). Plaintiffs therefore cannot sustain a Fourteenth Amendment claim against Ruiz based on her conduct leading up to and at trial.

Plaintiffs' further cursory allegation—that "Defendants Ruiz and Doe(s) opposed relief for Plaintiffs for over two decades" during post-conviction proceedings—does nothing to alter this conclusion. Am. Compl. ¶ 61. True, the Third Circuit has held that absolutely immunity does not

protect a prosecutor's conduct "[a]fter a conviction is obtained" unless that conduct is "part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings[.]" Yarris, 465 F.3d at 137.  But Plaintiffs here provide only a singular "naked assertion" devoid of "further factual enhancement," Iqbal, 556 U.S. at 678, one which is woefully deficient to strip Ruiz of her immunity.  The Amended Complaint does not explain how Ruiz actively opposed post-conviction relief efforts (if at all), or in what capacity that opposition occurred.[8]  So Plaintiffs also cannot sustain this Fourteenth Amendment claim based on Ruiz's post-conviction conduct.[9]

ii.   Count II — Conspiracy

For the same reasons Plaintiffs cannot sustain a civil rights conspiracy claim against Officer Defendants, Plaintiffs also cannot do so against Ruiz.  As explained above, the Amended Complaint simply does not allege the particulars of the conspiracy, ECF No. 36 at 13, and this Court will not "assume that [Plaintiffs] can prove facts that [they have] not alleged[,]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

Moreover, even if this Court were to credit Plaintiffs' bald assertion that Ruiz conspired to conceal exculpatory evidence, the Amended Complaint only targets Ruiz's conduct while acting as the Commonwealth's advocate, again, entitling her to absolutely immunity on that conduct. Odd, 538 F.3d at 211;  Rehberg, 566 U.S. at 369.

---

[8] To the contrary, Plaintiffs' recovery of the incident reports during post-conviction proceedings, Am. Compl. ¶ 43, belies the notion that Ruiz continued to conceal the evidence.

[9] To the extent Plaintiffs' claim hinges on the notion that Ruiz failed to proactively come forth with undisclosed evidence during post-conviction proceedings, any such claim would fall under Plaintiffs' "failure-to-intervene" claim, which, as explained below, also falls short.

iii.   Count III — Failure to Intervene

Likewise, the shortcomings that plague Plaintiffs' failure-to-intervene claim against Officer Defendants apply in equal force to Ruiz.  As noted, the Third Circuit has yet to recognize a failure-to-intervene claim outside of the excessive force context,  see Brown, 2022 WL 824236, at *5; Ogrod, 598 F. Supp. 3d at 273, and the Court will not do so here.  Accordingly, Ruiz is entitled to qualified immunity on this claim.

Further, and as noted in reference to Plaintiffs' core Fourteenth Amendment claim against Ruiz, the Amended Complaint is devoid of allegations detailing whether Ruiz acted in her prosecutorial capacity during these appellate and post-conviction proceedings (to the extent she acted at all), so it is possible that Ruiz is also entitled to absolutely immunity here.  The Court need not even reach that issue though, as that very failure also independently dooms Plaintiffs' claim because, again, the Court cannot infer facts Plaintiffs do not actually allege.  Twombly, 550 U.S. at 563 n.8.  In other words, because Plaintiffs do not actually allege how, why, or when Ruiz failed to intervene, they cannot sustain this claim.

**C.  Plaintiffs' Recent Guilty Pleas Further Undermine Their Claims**

The Court lastly concludes that the recent guilty pleas by both Plaintiffs to the very serious criminal charges against them arising out of the 1993 grocery store robbery/murder reinforce the Court's disposition in this case.  In view of those pleas, Defendants' alleged violations of Plaintiffs' constitutional rights relate only to collateral, process-based issues.  Those violations do not speak to—let alone undermine—the actual conduct to which Plaintiffs have pled guilty.

As discussed at length above, one issue Plaintiffs raise here is whether a key trial witness had been involved in a separate robbery the same night, whether this and other potentially exculpating facts had been concealed, and whether that amounted to a Brady or deliberate

deception constitutional violation. A second issue relates to Defendant Ruiz's allegedly inconsistent and incomplete redaction of certain inculpating statements from co-defendants. Plaintiffs contend that both reflected improper conduct, leading to their wrongful convictions.

However, Plaintiffs' recent guilty pleas are admissions of guilt to the felonious conduct underlying these very serious crimes, indicating that Defendants' alleged constitutional violations here, even if true, could not possibly have had a material impact on Plaintiffs' 1996 convictions. The two issues discussed above do not directly bear on Plaintiffs' participation in the grocery store robbery/murder, but instead the initial prosecution of that conduct. In other words, Plaintiffs' recent pleas are admissions of guilt for their conduct underlying the robbery/murder, which necessarily mean Plaintiffs' since-vacated 1996 convictions were not wrongful from a factual innocence perspective, reducing the materiality of the constitutional violations Plaintiffs now allege.

Thus, these recent guilty pleas serve as additional reasons why the Court should grant Defendants' claims for qualified or absolute immunity here.

## VI.    CONCLUSION

For the foregoing reasons, both Officer Defendants' Motion to Dismiss (ECF No. 36) and Defendant Ruiz's Motion to Dismiss (ECF No. 40) are **GRANTED with prejudice**. An appropriate order follows.


O:\CIVIL 22\22-4143 Gainey et al v. Philadelphia et al\Memorandum re Motions to Dismiss (22-4143).docx