IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAREE ABDULLAH, a/k/a GRENILE GAINEY and JARMAINE TRICE, a/k/a ERIC GREENE,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF PHILADELPHIA,<br><br>*Defendant*. | CIVIL ACTION<br><br>NO. 22-4143 |

## MEMORANDUM AND ORDER RE: APPOINTMENT OF GUARDIAN AD LITEM

Presently before the Court is the appointment of a Guardian Ad Litem for Plaintiff Grenille Gainey ("Mr. Gainey"). For the reasons detailed below, the Court finds that Mr. Gainey is both unable to understand the meaning and effect of legal proceedings and incapacitated under Pennsylvania law Pa. R. Civ. P. 2051. The Court will appoint a guardian ad litem pursuant to Fed. R. Civ. Pro. 17(c)(2) ("Rule 17(c)").

### I.  BACKGROUND

This is a very serious civil rights case. In 1996, Mr. Gainey was convicted of second degree murder and sentenced to life in prison, without the possibility of parole. Mr. Gainey spent twenty-seven years in prison before the district court granted his petition for habeas corpus relief and ordered that he be released or retried within 120 days. Following the district court's order, Mr. Gainey pled guilty to robbery and criminal conspiracy, was sentenced to ten to twenty years in prison, and released on time served.

The City has proposed a settlement offer, accepted by Mr. Gainey's co-Plaintiff Jarmaine Trice. The Court understands that it is Plaintiffs' counsel position that settlement is in Mr. Gainey's best interest.

On April 24, 2025, the parties were to attend a settlement conference before Magistrate Judge Carlos. On April 24, 2025, in advance of the settlement conference, Plaintiffs' counsel filed a Motion to Appoint a Guardian Ad Litem for Gainey. ECF 122. The Motion was premised on the fact that Mr. Gainey (1) has "extreme mental health issues," (2) checked himself into mental health hospitals on numerous occasions, (3) admits to violent thoughts, (5) has a history of cursing, screaming, and acting erratically towards counsel, (4) has a history of hearing things "not spoken" that threatened his ability to understand and appear competent for trial, (5) notified counsel, the day of the settlement conference, that he had flown to Miami, Florida, and refused to appear at the settlement conference, and (6) bestowed and then revoked counsels' authority to enter into a settlement on his behalf multiple times in the weeks leading up to trial. Based on the assertions made by Plaintiffs' counsel, the Court granted the Motion the same day. ECF 123. However, by subsequent Order the Court noted that it would not appoint a guardian ad litem until it was able to make a finding as to Mr. Gainey's competency. ECF 124. The Court Ordered Plaintiffs' counsel to provide evidence relevant to this determination, including whether Mr. Gainey has been adjudicated legally incompetent, evidence from medical professionals regarding any relevant diagnosis, whether Mr. Gainey consents to the appointment of a guardian ad litem, and any other evidence relevant to determining competency.

On May 2, 2025, Plaintiffs' counsel submitted a status report that stated that Mr. Gainey was hospitalized between April 25, 2025, and April 28, 2025, at Mount Sinai Medical Center in Miami, Florida ("Mt. Sinai"). ECF 128. The status report also included photographs of Mr.

Gainey's discharge papers from his April 2025, hospitalization. Id. Upon review of the status report, the Court ordered Plaintiffs' counsel to comply with its April 25, 2025, Order. ECF 129. The Order also required Mr. Gainey and Plaintiffs' counsel to attend an in-person Competency Hearing on May 8, 2025. Id.

The Competency Hearing began on the afternoon of May 8, 2025, and resumed the morning of May 9, 2025. At the Competency Hearing, Mr. Gainey was able to answer basic identifying questions, such as his full name, date of birth, and address. However, Mr. Gainey's answers to other questions appeared to confuse facts. For example, Mr. Gainey testified that his April 2025, hospitalization was due to rectal bleeding, yet his medical records show that he was only treated for mental illness. Mr. Gainey also testified that he was a paranoid schizophrenic, had experienced "plenty of breakdowns," had suffered a stroke, and believed people were out to get him, for example by stealing his food stamps.

On May 8, 2025, Plaintiffs' counsel filed a Motion for a Court Ordered Psychiatric Evaluation, ECF 137. The Court granted the Motion and appointed board-certified psychiatrist Dr. Eileen Bazelon, M.D. to conduct an independent psychiatric evaluation of Mr. Gainey. Id. The Court continued to Order Plaintiffs' counsel to produce the Ordered records on May 8, 2025, ECF 136, and May 15, 2025, ECF 144.

On May 19, 2025, Plaintiffs' counsel filed the medical records from Mr. Gainey's April 2025, hospitalization at Mt. Sinai, under seal. ECF 145. The Mt. Sinai medical records indicate that Mr. Gainey was hospitalized after police responded to reports of a man complaining of pain in his rectal area. Id. Following an exam, Mr. Gainey was found to be in stable physical condition. Id. Mr. Gainey was hospitalized, pursuant to the Florida Mental Health Act, that allows for the involuntary examination of individuals who are believed to be mentally ill and

pose a danger to themselves or others. Id. The records confirm that Mr. Gainey's testimony at the Competency Hearing, that his April 2025, hospitalization was precipitated by bleeding to his rectal area, was in fact, a delusion. Id. Mr. Gainey believed that someone had inserted an object into his rectum and/or that he was raped in his hotel room. Id. His friend, Christina Casumpang, reported to hospital staff that Mr. Gainey had been very angry, yelling, breaking things, and talking and laughing to himself. Id. Ms. Casumpang reported that Mr. Gainey was so concerned about his rectum that he used up to twenty rolls of toilet paper. Id.

The Mt. Sinai records further indicate that during his hospitalization Mr. Gainey was irritable, experienced tactile and auditory hallucinations, delusions, impaired judgment, poor judgment, and evasiveness in his responses, giving contradictory answers. Id. Mr. Gainey told hospital staff that his family wanted him dead, that his family was going to have him killed, that he was suspicious of his girlfriend Ms. Casumpang, that his lawyers wanted his money, and that "[p]eople are following me and want to kill me." Id. Mr. Gainey was given Haldol and Lorazepam, medications only prescribed in cases of severe agitation. Id. Mt. Sinai diagnosed Mr. Gainey with anxiety, cannabis use disorder, cocaine use disorder, paranoid schizophrenia, post-traumatic stress disorder, substance induced mood disorder, suicidal ideation, depression, and panic attacks. Id.

On May 20, 2025, Plaintiffs' counsel filed Dr. Bazelon's evaluation, under seal. ECF 146. Dr. Bazelon's evaluation determined that Mr. Gainey was legally incompetent and met the Pennsylvania definition of incapacitated. Id. Dr. Bazelon's evaluation noted that Mr. Gainey has an extensive and ongoing history of drug use, and that he stated that he had previously been a billionaire, accused his lawyers of taking his money, and does not trust doctors and will not take prescribed medication, and instead relies on cannabis when he is anxious. Id. During the

evaluation, Mr. Gainey informed Dr. Bazelon that he has nightmares, suicidal ideation, delusions, hallucinations, and persistent violent thoughts. Id. Dr. Bazelon noted that Mr. Gainey was evasive and at times even untruthful. Id. In Dr. Bazelon's medical opinion, Mr. Gainey likely suffers from paranoid schizophrenia, is not capable of making decisions for himself, and may be unable to make any decision at all, is an unreliable historian, exacerbates his mental health conditions with chronic drug use, and meets the definition of incapacitated as defined in Pa. R. Civ. P. 2051.

The undersigned has requested, and the City has agreed, that the City keep the settlement offer open pending the resolution of the Motion to Appoint a Guardian Ad Litem.

## II.    LEGAL STANDARD

To determine whether an individual is incompetent, the court applies the law of the state in which the individual is a resident. See Richards v. Duke Univ., 598 (3d Cir. 2006) (per curiam). Under the evidence of this case, Mr. Gainey is a resident of Pennsylvania. Pennsylvania law defines an "incapacitated person" as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety." Powell v. Symons, 680 F.3d 301, 308 n.6 (3d Cir. 2012); see also Pa. R. Civ. P. 2051.

Under Rule 17, a court must conduct a two-part inquiry upon a finding of incapacity. First, the court must determine whether the individual has a duly appointed representative under state law who may represent the individual's interest in the action. See Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 135 (3d Cir. 2002). If no such person exists, the court turns to Rule 17(c) and determines whether to appoint a guardian ad litem or issue another appropriate

order. See Fed. R. Civ. Pro. 17(c)(2) ("[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.").[1]

The Court's obligation to appoint a guardian ad litem under Rule 17(c) does not arise "until after a determination of incompetence has been made by the court in which the issue is raised." Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003). The Third Circuit has held that the appointment of a guardian ad litem is *inappropriate* where the allegedly incompetent party is "clearly able to protect [his] interests in this litigation" and "understand the meaning and effect of the legal proceedings [he] has instituted." Id.

### III.   DISCUSSION

The Third Circuit has held that a district court is unlikely to abuse its discretion to sua sponte appoint a guardian ad litem where it is presented with evidence (1) "from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent," or (2) "from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." Powell, 680 F.3d at 307. Courts have granted Motions to Appoint a Guardian Ad Litem where (1) an interested party averred that the individual is unable to understand their legal rights, (2) the individual had previously been adjudicated incompetent, and (3) the individual's representative failed to carry out the terms of a settlement agreement.[2] In contrast, courts

---

[1] An individual need not be pro se for the Court to appoint a guardian ad litem. See Wright v. Wenerowicz, 2018 WL 1081982, at *1 (E.D. Pa. Feb. 28, 2018) (Leeson) (counsel petitioned court to appoint a guardian ad litem for his client); Noe v. True, 507 F.2d 9, 12 (6th Cir. 1974) (a guardian ad litem has the "authority to engage counsel.").
[2] See Reed v. Schuylkill Health System, 2013 WL 6479127, at *6 (M.D. Pa. Dec. 9, 2013) (court found that individual was incompetent where individual's mother averred that she was "not of full mind and [] unable to attend to her affairs and does not properly understand her legal rights," even where there was limited information on how the party fit within the definition of "incapacitated person" under Pennsylvania law.); Wright, 2018 WL 1081982, at *3 (court found that individual was incompetent where PCRA court had previously determined that individual lacked competency to dismiss his attorney); Phinisee v. United States, 2018 WL 347580, at 3 (E.D. Pa. Jan. 10,

frequently decline to appoint a guardian ad litem without medical evidence of incompetence. See Nieves v. Cnty Transportation to SCI State Prison Sheriff Dep't, 2021 WL 12319636, at *3 (M.D. Pa. Oct. 25, 2021); Tejada v. DelBalso, 2018 WL 6047081, at *2 (M.D. Pa. Nov. 19, 2018).

The Court finds that Mr. Gainey's ability to receive and evaluate information effectively and communicate decisions is impaired to the extent that Mr. Gainey is unable to manage financial resources, meet the essential requirements for physical health and safety, or understand the meaning and effect of legal proceedings. Mt. Sinai diagnosed Mr. Gainey with, among other conditions, paranoid schizophrenia and substance induced mood disorder. ECF 145. Mt. Sinai staff further observed that Mr. Gainey suffered from a severe delusion regarding his rectum area and believed that his family wanted to kill him, his lawyers wanted his money, and people were following him and trying to kill him. Id.

Dr. Bazelon's evaluation concluded that Mr. Gainey was evasive and at times untruthful during their interview. ECF 146. Dr. Bazelon further noted that Mr. Gainey refuses to take prescribed medications and is an unreliable historian. Id. During the evaluation, Mr. Gainey informed Dr. Bazelon that he has nightmares, suicidal ideation, delusions, hallucinations, and persistent violent thoughts. Id. Dr. Bazelon determined that Mr. Gainey is likely a paranoid schizophrenic, not capable of making decisions for himself, and exacerbates his mental health conditions with chronic drug use. Id.

Further, Mr. Gainey's attorneys, who have represented him for the pendency of this litigation, a relationship lasting nearly three years, have stated that Mr. Gainey suffers from violent thoughts, erratic behaviors, and hears sounds that are not there, causing him confusion.

---

2018) (Mag. Judge Lloret) (guardian ad litem was appointed for minor where minor's mother refused to carry out the terms of a settlement agreement).

The Court determines that Mr. Gainey does not have a duly appointed representative under state law who may represent his interests in this case. In his interview with Dr. Bazelon, Mr. Gainey suggested that he is estranged from his mother and brother. At the Competency Hearing, Mr. Gainey testified that he had one adult son, however, his son is currently incarcerated. At the Competency Hearing, Mr. Gainey also testified that he lives with his girlfriend and caretaker Ms. Casumpung. To the best of the Court's knowledge, Mr. Gainey and Ms. Casumpung are not married and Mr. Gainey has not previously been appointed a guardian.

Given that Mr. Gainey's ability to receive and evaluate information effectively and communicate decisions is impaired to the extent that Mr. Gainey is unable to manage financial resources, meet the essential requirements for physical health and safety, or understand the meaning and effect of legal proceedings, appointment of a guardian ad litem is appropriate. The Court will appoint Shira Yoshor, Esquire as guardian ad litem. Ms. Yoshor is a partner at Greenberg Traurig and is personally known to the undersigned. Ms. Yoshor has previously served as a Master in federal litigation regarding the Equal Pay Act, with great skill and accomplishment. Ms. Yoshor advised the Court that she has no conflicts that would prevent her from taking on the role of guardian ad litem in this case. The Court directs Ms. Yoshor to promptly meet with Mr. Gainey, Plaintiffs' counsel, and anyone else necessary to determine whether acceptance of the settlement offer is in Mr. Gainey's best interest. The Court has provided Ms. Yoshor no additional instruction on the background of this case or what she should recommend as guardian ad litem.

As guardian ad litem, Ms. Yoshor is "an officer of the court with full responsibility to assist the court to 'secure a just, speedy, and inexpensive determination of the action.'" Noe, 507 F.2d at 12 (internal citations omitted). Ms. Yoshor has authority to engage in the settlement

process. The Court directs Ms. Yoshor to promptly review the proposed settlement agreement and meet with Mr. Gainey, Plaintiffs' counsel, and anyone else necessary to determine whether acceptance of the settlement offer is in Mr. Gainey's best interest. As such, Ms. Yoshor shall file a Petition to Approve or Disapprove the Settlement Agreement, within fourteen days, that states whether Ms. Yoshor finds the settlement agreement to be in Mr. Gainey's best interest. The Petition shall be filed under seal. Any Objections to the Petition must be filed within fourteen (14) days of the Petition being filed on the docket. The Court will hold a Hearing on the Petition on June 18, 2025, at 3:00 p.m. in Courtroom 3A, following which the Court will promptly rule. In the interest of efficiency, Plaintiffs' counsel shall file a Motion for Attorneys' Fees, under seal, by June 11, 2025, so that of if the Court approves the settlement agreement there are no further delays.

### IV. **CONCLUSION**

For the reasons stated, the Court finds that Mr. Gainey is incompetent and pursuant to Rule 17 will appoint Ms. Yoshor as his guardian ad litem in this case.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 22\22-4143 Gainey et al v. Philadelphia et al\22-4143 appt of guardian opinion.docx