**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NAREE ABDULLAH, a/k/a GRENILE GAINEY and JARMAINE TRICE, a/k/a ERIC GREENE,** | |
| Plaintiffs, | **CIVIL ACTION** |
| **v.** | **NO. 22-4143** |
| **CITY OF PHILADELPHIA, et al.,** | |
| Defendants. | |

<u>**MEMORANDUM RE: FINAL SETTLEMENT APPROVAL**</u>

Baylson, J.                                                November 18, 2025

### I.    <u>FACTUAL BACKGROUND</u>

This is a serious civil rights case. In 1996, Mr. Gainey was convicted of second-degree murder and sentenced to life in prison, without the possibility of parole. Mr. Gainey spent twenty-seven years in prison before his petition for habeas corpus relief was granted, following which Mr. Gainey pled guilty to the lesser offenses of robbery and criminal conspiracy and was released on time served.

The following is a short background summary. Previous filings by this Court provide more details leading up to this Memorandum.

Following the Court's partial denial of summary judgment, ECF 108, the City offered Mr. Gainey and his co-Plaintiff, Mr. Trice, $550,000 each to settle the case. Mr. Trice accepted the settlement. Mr. Gainey opposed the settlement. Trial was set for May 8, 2025. ECF 117. On April 24, 2025, Plaintiffs' counsel, namely Shawn Page ("Mr. Page") and Dean Owens ("Mr. Owens"), hereinafter referred to as "Counsel," filed a Motion to Appoint a Guardian Ad Litem, asserting their client was not competent to make rational decisions regarding the settlement. ECF

122. The Court granted the Motion the same day, ECF 123, but by subsequent Order noted that it would not appoint a Guardian Ad Litem until it was able to make a finding as to Mr. Gainey's competency. ECF 124. Appointment of a Guardian Ad Litem is only appropriate where "a determination of incompetency has been made by the court in which the issue is raised." Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003). The Court appointed Dr. Eileen Bazelon, M.D. to conduct an Independent Psychiatric Evaluation. See ECF 138.

Based on the two-day Competency Hearing, ECF 135, 139, Court-Ordered Independent Psychiatric Evaluation, ECF 138, and a review of Mr. Gainey's medical records from an April 2025 hospitalization, ECF 145, 146, the Court found that Mr. Gainey was incapacitated under Pennsylvania law and appointed Shira Yoshor, Esq. as Guardian Ad Litem. ECF 147. The Court directed Mr. Gainey, Counsel, and anyone else necessary to meet with Ms. Yoshor and determine whether the City's Proposed Settlement Agreement was in Mr. Gainey's best interest and file a Petition to Approve or Disapprove the proposed agreement. ECF 148. The Court allowed Counsel to file any objections to Ms. Yoshor's Petition within seven days of its docketing and promptly notify Mr. Gainey of the Petition and his right to object. Id. No objections were filed.

The Court held an Approval Hearing on June 18, 2025, in which it heard from Ms. Yoshor, Mr. Owens, and Mr. Gainey. Id.; ECF 154. Following the Hearing, the Court Conditionally Approved the Proposed Settlement Agreement. ECF 157. The Court Ordered that Final Approval required Ms. Yoshor to negotiate the remaining settlement terms with the City and negotiate a settlement structure that comports with Pa. R. Civ. Pro. 2064. Id. In crafting the settlement structure, the Court granted Ms. Yoshor authority to appoint an attorney or firm that specializes in structured settlements and special needs trusts, if necessary. Id. Lastly, the Court extended the deadline for Counsel to file their Fee Petition to June 23, 2025. Id. On June 23, 2025, counsel

filed a Petition for Fees and Costs, ECF 160, and on June 24, 2025, a Petition for Guardian Ad Litem fees, ECF 161.

On July 23, 2025, the Court held a Second Approval Hearing.  ECF 162.  Following the Hearing, the Court Ordered (1) Ms. Yoshor to file a summary of the Proposed Settlement Structure, under seal; (2) the City to respond to Ms. Yoshor's previously submitted Proposed Settlement Agreement by July 30, 2025, including any proposed revisions; (3) Ms. Yoshor and the City to meet and confer in a good-faith effort to resolve any differences in their Proposed Settlement Agreements; (4) Ms. Yoshor and the City to each file with the Court a Proposed Settlement Agreement by August 6, 2025, if they could not come to an agreement on the language of the Proposed Settlement Agreement, at which point the Court would determine which version to adopt; and (5) scheduled a further Approval Hearing for August 11, 2025.  Id.

On July 25, 2025, Ms. Yoshor[1] submitted her Report & Recommendation of Guardian Ad Litem Regarding Proposed Settlement Agreement and Structure of Settlement Payments ("Guardian Ad Litem's R&R") with the Court, under seal.  The Guardian Ad Litem's R&R was docketed on July 28, 2025.  ECF 165.

First, the Guardian Ad Litem's R&R recommends $50,000 be paid into a Special Needs Trust ("SNT") because SNT's "allow the beneficiary (here, Mr. Gainey), to maintain eligibility for means-tested public benefit programs and can also supplement Mr. Gainey's quality of life." Guardian Ad Litem's R&R (ECF 165) at 4.  Mr. Gainey can request withdrawals from the SNT for allowable expenses including the purchase of a home or condo, purchase of a vehicle, vehicle insurance, household goods, educational expenses, and other expenses that are not covered by

---

[1] Throughout this case, Ms. Yoshor's work as Guardian Ad Litem has been thorough, skillful, and appreciated by the Court.  She has approached this difficult position carefully and with due regard for Mr. Gainey's wellbeing and future needs.

public benefit programs.  Id.  The Guardian Ad Litem's R&R proposes that the Legacy Enhancement Trust ("Legacy Trust"), a recognized Pool Trust, be engaged to establish the SNT. Id. at 3.  The Guardian Ad Litem's R&R provides a succinct overview of the Legacy Trust.  It details Legacy Trust's one-time enrollment fee of $1,500 (because the fund amount exceeds $20,000) and the annual administrative fee of 1.95%, payable in advance.  Id. at 4.  It notes that Legacy Trust is a non-profit organization, created in accordance with 42 U.S.C. § 1396p(d)(4)(c) of the Social Security Act, created for the benefit of people with disabilities.  Id.  It explains that the Members of Legacy Trust's Board, the Trustee, and employees of the Master Pooled Trust are considered fiduciaries of the beneficiary, Mr. Gainey, and "shall not profit directly or indirectly from the investments."  Id.

Second, the Guardian Ad Litem's R&R proposes that the balance of the settlement funds, less attorneys' fees and costs, be used to purchase a lifetime life insurance annuity.  Guardian Ad Litem's R&R at 2.  The Guardian Ad Litem's R&R proposes to retain Lisa Augustine of Augustine Advisors to structure the settlement, as Ms. Augustine "only works with injured parties and their families to help protect their settlement funds" and "has placed over 5,000 structured settlements during her career."  Id.  The Guardian Ad Litem's R&R states that Ms. Augustine is a licensed broker with the life insurance companies and will be responsible for placing the annuity.  Id. at 2. It explains that Ms. Augustine "provides the mandatory IRS annuity language to protect the tax-free, protected, and guaranteed status of the annuity."  Id.  The Guardian Ad Litem's R&R recommends that an annuity be purchased through American General Life Insurance Company ("American General").  Id. at 3.  If $250,000 are used to purchase a lifetime annuity, Mr. Gainey will be guaranteed $1,255 in monthly income for the rest of his life.  Id.  The Guardian Ad Litem's R&R notes that this amounts to a "tax-free interest rate of 5.47% and the first 10 years are

4

guaranteed for beneficiary protection." Id.  The Guardian Ad Litem's R&R's proposal to purchase a lifetime annuity, as opposed to an eight-, ten-, or twelve-year plan, is informed by the fact that a monthly income of $1,255, under current rules, would not jeopardize Mr. Gainey's ability to participate in government assistance programs.  Id.  Additionally, it notes that a shorter annuity "could comprise [Mr. Gainey's] social benefits, deplete the funds faster, and possibly leave [Mr. Gainey] exposed to potential creditors or predators."  Id. at 2-3.

Lastly, the Guardian Ad Litem's R&R requests that the Court issue an Order that requires: (1) the City to pay the settlement amount into a trust account at Greenberg Traurig, the firm at which Ms. Yoshor is a partner, (2) Ms. Yoshor to establish an account on Mr. Gainey's behalf with Legacy Trust in the amount of $50,000, and (3) Ms. Yoshor to use the remainder of the settlement funds to purchase a lifetime annuity through American General, with Ms. Augustine's assistance. Id. at 5.[2]  Finally, the Guardian Ad Litem's R&R requests that the Court waive Ms. Yoshor's fees and states Ms. Yoshor's willingness to provide her services as Guardian Ad Litem, *pro bono*.

On September 10, 2025, the Court held a Hearing on Final Approval of the Settlement. ECF 169.  Although Counsel for Plaintiff and Counsel for the City failed to appear at the hearing, Ms. Yoshor and Mr. Gainey were present.  See id.  Ms. Yoshor testified before the Court the details of the settlement agreement and asserted that Mr. Gainey would need to set up a P.O. Box or a place where the monies could be sent so Mr. Gainey could have access to the monies.  ECF 171 at 3:24–5:15.  Ms. Yoshor also testified that she desired to perform her role as Guardian Ad Litem on a *pro bono* basis so that Mr. Gainey has the benefit of any funds to which he may be entitled. Id. at 6:19–7:5.  Mr. Gainey also addressed the Court and stated that he still does not accept the

---

[2] The Guardian Ad Litem's R&R notes that the exact amount of funds available to purchase the lifetime annuity will be "whatever is available after the Court determines the amount of attorneys' fees and costs."  Guardian Ad Litem R&R at 5.

settlement and challenged the finding of incompetency.  Id. at 7:17–8:24.  Following the Hearing

on Final Approval of the Settlement, on November 3, 2025, Ms. Yoshor filed the executed Final

Settlement Agreement.

On November 5, 2025, the Court held a Hearing on the Petition for Attorney Fees and

Settlement.  ECF 175.  At the Hearing, the Court inquired as to the Petition for Attorneys' Fees

and Costs and how it will be divided.  Id.  The Court also discussed with Ms. Yoshor the details

of the settlement funds, the SNT, and filing a Petition with the Orphans' Court of the Philadelphia

Court of Common Pleas to assume jurisdiction over any future proceedings.  Id.

## II.    **LEGAL STANDARD**

The Court reviews the proposed settlement agreement that releases the City from all

liability in exchange for it paying Mr. Gainey $550,000.  At the outset, the Court recognizes the

unique situation this case presents.   Courts have an inherent duty to protect the interests of minors

and incapacitated individuals.  Nice v. Centennial Area Sc. Dist., 98 F. Supp. 2d 665, 667 (E.D.

Pa. 2000) (Robreno, J.).   As part of that duty, the Court must determine the fairness of any

settlement agreement and the reasonableness of any attorneys' fees to be paid from the settlement

amount in a suit brought on behalf of a minor or incompetent."  Id.  Local Rule 41.2 requires court

approval for the settlement of actions and resulting fee petitions involving minors or incapacitated

individuals.[3]  "The determination of the fairness of a settlement agreement involving a minor and

---

[3] See E.D.P.A. L.R. Civ. Pro. 41.2

No claim of a minor or incapacitated person or of a decedent's estate in which a minor or incapacitated person has an interest shall be compromised, settled, or dismissed unless approved by the court.

No distribution of proceeds shall be made out of any fund obtained for a minor, incapacitated person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court.

No counsel fee, costs or expenses shall be paid out of any fund obtained for a minor, incapacitated person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court.

the reasonableness of the amount to be apportioned from the proceeds of that settlement agreement in payment of attorneys' fees implicates the parties' substantive rights."  Id.

Generally, federal courts apply federal law to substantive rights when exercising federal question jurisdiction, as we are here, and state law when exercising diversity jurisdiction. However, federal courts exercising federal question jurisdiction may apply state law to substantive rights where "federal law does not expressly establish a rule of decision" and "the state law on the issue is well-developed and the application of state law will not impinge upon any federal interest." Id. at 668.

Mr. Gainey asserted Section 1983 claims against the City of Philadelphia.  There is nothing in Section 1983 that proves a standard to evaluate a minor's or incapacitated person's compromise. Like the courts in Geness and Saunders assessing incapacitated individuals' compromises pursuant to federal question jurisdiction, this Court will borrow from state law to determine the fairness of the Proposed Settlement Agreement.[4]

Pennsylvania Rule of Civil Procedure 2064 ("Rule 2064") requires court approval for a settlement of an incapacitated person's claim: "[n]o action to which an incapacitated person is a party shall be compromised, settled, or discontinued except after approval by the court pursuant to a petition presented by any party in interest."  Pa. R. Civ. P. 2064(a).  The Pennsylvania Rules of Civil Procedure identify a nearly identical process for the settlement of a minor's claim.[5]  "When a compromise or settlement has been approved by the court, or when a judgment has been entered

---

[4] In Geness v. Pennsylvania, the Court, exercising federal question jurisdiction, relied on Nice to apply Pennsylvania law to evaluate an incapacitated individual's compromise of a civil rights suit brought under the American with Disabilities Act.  2020 WL 4350239, at *7 (W.D. Pa. Jul. 29, 2020).  Similarly, in Saunders by and through Saunders v. USD 353 Wellington, 2022 WL 179460, at *1 (D. Kan. Jan. 20, 2022), the Court cited to Nice to apply Kansas law to the compromise of an incapacitated individual's civil right suit brought pursuant to Section 1983.

[5] Pa. R. Civ. P. 2039(a) similarly provides "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor."

upon a verdict or by agreement, the court, upon petition by the guardian or the guardian ad litem or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian or the guardian ad litem for the payment of counsel fees and other expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses."  Pa. R. Civ. P. 2064(b). Where "the incapacitated person has no [] guardian, and none is to be appointed, the court may order" that "an agreement be executed providing for a structured settlement underwritten by a financially responsible entity that assumes responsibility for future payments"[6] or that "a trust agreement be executed with a corporate fiduciary which is independent from the incapacitated person and anyone acting on the incapacitated person's behalf."[7]

The Court may evaluate the fairness of the proposed settlement and the reasonableness of the attorneys' fees and costs under both Rule 2064 and Local Rule 41.2.  Johnson v. Clearfield Area Sch. Dist., 319 F. Supp. 2d 583, 586 n.3 (W.D. Pa. 2004).

Johnson, exercising federal question jurisdiction, applied both Pennsylvania law and the Western District of Pennsylvania's Local Rule 17.1, the equivalent of our Local Rule 41.2, because "the Commonwealth's jurisprudence in this area is well-developed, and Pennsylvania where the alleged civil rights violations occurred clearly has an interest in safeguarding the affairs of minor litigants."  Id.  Johnson further reasoned that both Pennsylvania law and Local Rule 17.1 "have been interpreted to include the same discretionary requirement."  Id. at 588 n.4.  Geness applied

---

[6] Pa. R. Civ. P. 2064(b)(3) further requires that "[a]ll moneys paid from the structured settlement during incapacity shall be paid into a restricted account as provided by subdivision (b)(2) of this rule."

[7] Pa. R. Civ. P. 2064(b)(4) further requires that the corporate fiduciary "is lawfully authorized to engage in trust business in Pennsylvania or the state of the incapacitated person's domicile" and that the trust is "(i) designated to receive the fund; (ii) contains such terms for investment, disbursement and distribution of the fund as the court deems proper; and (iii) expressly provides that it is subject to the court's continuing jurisdiction, including the court's right to modify or terminate, for cause shown, although the trust may be otherwise irrevocable."

<u>Johnson's</u> reasoning to apply both Pennsylvania Law and Local Rule 17.1 to evaluate the proposed settlement and requested attorneys' fees of an incapacitated individual's federal civil rights suit. <u>Geness</u>, 2020 WL 4350239, at *8. Neither <u>Johnson</u> nor <u>Geness</u> saw any "authority to distinguish the settlement of minor's claims from the settlement of an incompetent person's claims." <u>Id.</u> The Court agrees and will apply Rule 2064 and Local Rule 41.2 to determine the fairness of the proposed settlement and the reasonableness of the requested attorneys' fees and costs.

"Pennsylvania courts are 'given the mandate to supervise all aspects of settlements in which a minor is a party in interest, ... and in considering whether to approve a settlement, the Court is charged with the best interests of the minor.'" <u>Geness</u>, 2020 WL 4350239, at *8 (quoting <u>Johnson</u>, 319 F. Supp. 2d at 586 n.3).

Applying these standards, the Court will consider the (1) fairness of the proposed settlement, and (2) reasonableness of the requested attorneys' fees and costs.

## III. <u>DISCUSSION</u>

The Court will evaluate the fairness of the proposed settlement before turning to the reasonableness of the requested fee award.

### A. Fairness of Settlement

The City has offered Mr. Gainey $550,000 to settle his claims. The Court finds that this is a very fair amount. Mr. Gainey's co-Plaintiff, Mr. Trice, accepted the same amount to settle identical claims. In her Petition to Approve the Proposed Settlement Agreement, Ms. Yoshor noted that Pennsylvania's last attempt, in 2023, to create a "mandatory statutory amount to be paid to exonerated individuals . . . would have allotted $75,000 for each year that the person was incarcerated wrongfully in a case other than one involving the death penalty." Petition to Approve Settlement at 9. Mr. Gainey was convicted of second-degree murder for which he served twenty-

seven years in prison.  Following the grant of his Habeas Petition, Mr. Gainey pled guilty to robbery and criminal conspiracy and was released on time served.  Under the Pennsylvania Sentencing Guidelines in effect at the time of Mr. Gainey's conviction, Mr. Gainey likely would have been sentenced to ten to twenty years for robbery and criminal conspiracy.  <u>Id.</u>  Had Pennsylvania passed mandatory payment amounts in 2023, Mr. Gainey would be entitled to $750,000 to $1,275,000.  In states where mandatory payment amounts have been enacted, wrongfully convicted individuals are entitled to anywhere from $4,000 to $265,000 for every year wrongfully incarcerated.  <u>Id.</u> at 9.  A settlement of $550,000 is fair in this context.  The settlement amount is particularly fair when the uncertainties of trial are considered.[8]  Lastly, the Court is mindful of Mr. Gainey's unique and ongoing needs and recognizes that this settlement is crucial to Mr. Gainey's ability to afford safe and stable housing, quality medical care, and other necessities including food and transportation.

Ms. Yoshor recommends paying $50,000 of the settlement amount into a SNT and using the remainder of the fund to purchase a lifetime life insurance annuity.  The Court finds that the creation of a SNT and purchase of a lifetime life insurance annuity are fair and comport with the requirements of Pa. R. Civ. P. 2064(b)(3)-(4).

**1.  Special Needs Trust**

A SNT provides numerous benefits, most important of which is that it allows Mr. Gainey to retain his public benefits eligibility.  Ms. Yoshor explains that "[t]he advantages of the Special Needs Trust are that they allow the beneficiary (here, Mr. Gainey), to maintain eligibility for means-tested public benefit programs."  Guardian Ad Litem R&R at 4.  A SNT provides Mr.

---

[8] In the undersigned's experience, Section 1983 cases against police officers and government entities are very hard to prove and often result in defense verdicts.

Gainey the flexibility to make larger purchases, such as a car or a home downpayment, without losing his government provided medical benefits, disability benefits, and food assistance. Id. at 2.

Ms. Yoshor proposes paying $50,000 into an SNT to be managed by Legacy Trust, a non-profit operating in Texas and Pennsylvania that specializes in trusts for incapacitated individuals. The proposed SNT comports with Rule 2064.

First, Rule 2064 requires "a trust agreement be executed with a corporate fiduciary which is independent from the incapacitated person and anyone acting on the incapacitated persons behalf and is lawfully authorized to engage in trust business in Pennsylvania or the state of the incapacitated person's domicile." Pa. R. Civ. P. 2064(b)(4). The Court previously found that Mr. Gainey was incapacitated under Pennsylvania law. ECF 147. Mr. Gainey is domiciled in Pennsylvania. Legacy Trust is a corporate fiduciary independent from Mr. Gainey that is lawfully authorized to engage in trust business in Pennsylvania. Legacy Trust is a registered non-profit that maintains a Pennsylvania office. Guardian Ad Litem R&R Ex. F, ECF 165-6. The City will fund the SNT, and the Grantor of the Joinder Agreement to Legacy Trust is Shira Yoshor, as Guardian Ad Litem for Mr. Gainey. Release at 2; Exhibit B, Legacy Enhancement Master Pooled Trust Joinder Agreement ("Joinder Agreement") at 1.

Second, Rule 2064 requires that the trust is designated to receive the fund. Pa. R. Civ. P. 2064(b)(4)(i). The Court hereby designates Legacy Trust to receive the fund.

Third, Rule 2064 requires that the trust contain terms for investment, disbursement and distribution of the fund as the court deems proper. Pa. R. Civ. P. 2064(b)(4)(ii). The Joinder Agreement provides that a "sub-account shall be pooled for investment and management purposes." Joinder Agreement at 2. Mr. Gainey may make requests for distributions from the SNT by filling out a disbursement request form. Id. Legacy Trust provides payment for any

11

approved purchases directly to the vendor or service provider upon Mr. Gainey's request or via a debit card that can be reloaded for a specific amount per week (usually a maximum of $500 per week).  Guardian Ad Litem R&R Ex. E, ECF 165-5 at 1.  Legacy Trust only distributes funds to third parties and prohibits cash payments to trust beneficiaries (i.e., Mr. Gainey) because "cash will count as income under the eligibility rules for most public benefits."  Id.  The Joinder Agreement further provides that "[a]ny nonsupport items that are needed for maintaining the Beneficiary's health, safety, and welfare may be provided to or for the Beneficiary when, in the sole and absolute judgment of the Trustee, such needs are not being met by government assistance or from other resources available to the Beneficiary."  Joinder Agreement at 2.  Legacy Trust shall not pay "[d]isbursements for expenses incurred prior to 90 days of a submission of a disbursement request form."  Id.  The Court finds that the SNT includes fair investment, disbursement, and distribution terms.  The Court further notes that Ms. Yoshor intends to file a Petition in the Orphans' Court of the Philadelphia Court of Common Pleas to assume jurisdiction over any future proceedings regarding the SNT.

### 2. Life Insurance Annuity

A life insurance annuity is a fair method by which to manage the majority of Mr. Gainey's settlement funds.

Ms. Yoshor proposes using the remainder of the settlement funds, less attorneys' fees and costs, to purchase a period certain life insurance annuity through American General.  Ms. Yoshor recommends consulting with Ms. Augustine in making this purchase.  The proposed period certain annuity comports with Rule 2064.

First, Rule 2064 requires that "an agreement be executed providing for a structured settlement underwritten by a financially responsible entity that assumes responsibility for future

payments." Pa. R. Civ. P. 2064(b)(3). Ms. Yoshor and the City intend to execute a non-qualified assignment agreement with American General under which American General will underwrite the settlement and assume responsibility for annuity payments.

Second, Rule 2064 requires that "[a]ll moneys paid from the structured settlement during incapacity shall be paid into a restricted account as provided by subdivision (b)(2) of this rule." Pa. R. Civ. P. 2064(b)(3). Provision (b)(2) of Rule 2064 requires in pertinent part that funds "be deposited in one or more savings accounts in the name of the incapacitated person in banks, buildings and loan associations, savings and loan associations or credit unions, deposits in which are insured by a Federal governmental agency." Pa. R. Civ. P. 2064(b)(2). Under the period certain annuity plan, Mr. Gainey will receive $3,522.58 per month (based on a $250,000 purchase) for 6 years and 6 months (totaling 78 payments, beginning January 15, 2026, and guaranteed through June 15, 2032).

In summary, the Court finds the settlement amount and structure to be fair to Mr. Gainey and consistent with Pennsylvania Rule 2064. As such, the Court grants final approval to the settlement of this case.

### B. Attorneys' Fees and Costs

Mr. Gainey's Counsel seeks attorneys' fees and $30,325.83 in costs. The $30,325.83 in costs include the first 18 hours of work by Ms. Yoshor. As Ms. Yoshor would like to provide her services as Guardian Ad Litem *pro bono*, Ms. Yoshor would like the Court to waive her fees. Excluding Ms. Yoshor's time, Counsels' costs are $10,543.83. Counsel has agreed to reduce their requested fee award to 35% of the fund, a 5% reduction from the 40% contingency fee agreed to by Mr. Gainey in the Retainer Agreement.

The question is twofold.  First, the Court must determine what is fair compensation for obtaining a settlement from the City.  In making this determination, the Court recognizes that Counsel should be paid for their work and evaluates their compensation based on the services Counsel invested in representing Mr. Gainey.  Second, the Court, aware of Mr. Gainey's incapacity, must ensure that the settlement terms, including the attorneys' fees, are fair to Mr. Gainey.

Rule 2064 requires the Court to issue an Order regarding the payment of counsel fees and other expenses but permits the Court to "fix[]" those expenses.  Pa. R. Civ. Pro. 2064(b).  Local Rule 41.2 places the decision of what fee is appropriate at the discretion of the district court.  L. R. Civ. P. 41.2(c).

"Under Pennsylvania law, the reasonableness of attorneys' fees to be paid under a settlement involving a minor is determined by applying a two-step process articulated by the Pennsylvania Superior Court in Gilmore v. Dondero."  Nice, 98 F. Supp. 2d at 670 (citing Gilmore v. Dondero, 582 A.2d 1106, 1109–10 (Pa. Super. Ct. 1990)).  First, the Court must determine whether the court of common pleas in the county with jurisdiction over Mr. Gainey has adopted a presumptive lodestar for fees involving the settlement of minor's or incapacitated individual's claims.  Id.  Second, if a presumptive lodestar exists, the Court may adjust that lodestar depending on the effectiveness of Counsels' performance under the circumstances.  Id. (citing In re LaRocca's Trust Estate, 246 A.2d 337, 339 (Pa. 1968)).  The Court has extensively reviewed the case law from this District regarding the award of attorneys' fees in compromises governed by Local Rule 41.2.  Nearly every Court to consider the issue, including this Court, applied Gilmore's two-step framework.  See Lee v. Victoria's Secret, LLC, 2012 WL 628015, at *5 (E.D. Pa. Feb. 27, 2012)

14

(Baylson, J.) (applying <u>Gilmore's</u> two-step test to determine the reasonableness of a fee award where a minor's claims were settled).[9]

Turning to the first <u>Gilmore</u> step, Mr. Gainey is a resident of Philadelphia County and thus jurisdiction lies with the Philadelphia Court of Common Pleas, which has adopted a presumptive lodestar of 33% of the net fund in settlements involving minors or incapacitated individuals.  <u>See</u> Phila. Cnty. L. R. Civ. P. 2039(F).[10]  "The net fund is calculated by subtracting the attorney's reimbursable costs from the gross settlement amount."  <u>Id.</u>  Additionally, "[c]ounsel fees shall be reduced by the amount of collateral payments received as counsel fees for representation involving the same matter for third parties."  <u>Id.</u>

Here, the presumptive lodestar is $170,956.17.  This represents 33% of the net fund, less Counsels' reimbursable costs of $10,543.83.  In calculating the presumptive lodestar, the Court has not accounted for the fact that Counsel may receive separate payment for their work in this matter from Mr. Trice.  However, in determining the award's reasonableness, the Court considers

---

[9] <u>See also</u> <u>Epps v. Geico Secure Ins. Co.</u>, 2023 WL 5985281, at *2 (E.D. Pa. Sept. 14, 2023) (Pappert, J.); <u>Sligh v. Friskies Petcare Co., Inc.</u>, 2001 WL 1549544, at * 1-2 (E.D. Pa. Dec. 3, 2001) (Hutton, J.); <u>Kane v. Cnty. of Chester</u>, 2016 WL 3997258, at *3 (E.D. Pa. Jul. 25, 2016) (Perkins, J.); <u>J.N. Penn-Delco Sch. Dist.</u>, 2017 WL 395481, at *3 (E.D. Pa. Jan. 30, 2017) (Robreno, J.); <u>Estate of Spence by and through Spence v. Yeadon Borough</u>, 2025 WL 834489, at *1 (E.D. Pa. Mar. 17, 2025) (Pappert, J.); <u>Hock v. Dep't of Human Servs.</u>, <u>Report and Recommendation</u>, 2019 WL 1495043 at*1, 3 (E.D. Pa. Jan. 18, 2019) (Sitarski, J.); <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 53 F. Supp. 2d 794, 801-802 (E.D. Pa. Jun. 21, 1999) (Robreno, J.); <u>Leto v. Illum</u>, 2021 WL 2186238, at *3 (E.D. Pa. May 28, 2021) (Pappert, J.); <u>Matter of McLean Contracting</u>, 2017 WL 2618855, at *2 (E.D. Pa. Jun. 16, 2017) (Jones, II, J.).

[10] Phila. Cnty. L. R. Civ. P. 2039(F) reads in full:

> The proposed Order of Distribution shall include an award of counsel fees. The standard for the award of counsel fees in the representation of incapacitated persons is that such fees must be reasonable in accordance with the guidelines set forth in Rule 1.5 of the Rules of Professional Conduct. Counsel are advised to maintain time records.

> Counsel fees of one-third (1/3) of the net fund recovered may be considered reasonable, subject to the approval of the Court. The net fund is calculated by subtracting the attorney's reimbursable costs from the gross settlement amount. Counsel fees shall be reduced by the amount of collateral payments received as counsel fees for representation involving the same matter from third parties.

that Counsel will presumably receive 40% of Mr. Trice's $550,000 settlement, in addition to related fees and costs.

To determine if the presumptive lodestar requires modification, the Court turns to the second <u>Gilmore</u> step, which it cross-checks with the Third Circuit factors for assessing the reasonableness of attorneys' fees under the percentage-of-recovery method.

The second <u>Gilmore</u> step requires the Court to adjust the presumptive lodestar depending on Counsels' effectiveness under the circumstances. At this step, the Court may also "fix" the award, Pa. R. Civ. P. 2064(b), because as the "protector of the [incapacitated individual's] interest the court must independently investigate the fee to be charged to ensure that it is fair and reasonable," <u>Nice</u>, 98 F. Supp. 2d at 670. The Pennsylvania Supreme Court has articulated ten factors for courts to consider in assessing the effectiveness of an attorney's performance:

> (1) the amount of work performed; (2) the character of the services rendered; (3) the difficulty of problems involved; (4) the importance of the litigation; (5) the degree of responsibility incurred; (6) whether the fund involved was "created" by the attorney; (7) the professional skill and standing of the attorney in her profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services rendered; and (10) "very importantly" the amount of money in question.

<u>See id.</u> (citing <u>Gilmore</u>, 582 A.2d at 1109-10) (quoting <u>In re LaRocca's Trust Estate</u>, 246 A.2d at 339)). The Third Circuit has held similarly. <u>See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.</u>, 674 F. App'x 130, 133 (3d Cir. 2016) (non-precedential) (vacating and remanding case to the district court for a proper examination of the reasonableness of the attorneys' fees under Pennsylvania law, including "the amount and character of the services

performed, the difficulty of the problems involved, and the amount of money or the value of property in question") (citing <u>McMullen v. Kutz</u>, 603 Pa. 602, 985 A.2d 769, 774 (2009)).

The factors for assessing the reasonableness of attorneys' fees under the percentage-of-recovery method were discussed in <u>Gunter v. Ridgewood Energy Corporation</u>, 223 F.3d 190, 195 n.1 (3d Cir. 2000) and <u>In re Prudential Insurance Corporation Am. Sales Prac. Litigation Agent Actions</u>, 148 F.3d 283, 336–40 (3d Cir. 1998) (noting also that "it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation" (citation modified)):

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

Applying all these factors, the Court finds that the presumptive lodestar is overly generous in this case and will reduce Counsels' fee award to 30% of the settlement fund.

*The amount of work performed*.  On one hand, this case has been active for three years, in which time Counsel defended against two Motions to Dismiss and a Motion for Summary Judgment, engaged in settlement discussions, and Petitioned the Court to Appoint a Guardian Ad Litem.  On the other hand, as discussed below, Counsel did not engage in very much discovery

and missed some Court Orders and deadlines.  Similarly, the attorneys assigned to this case changed throughout the litigation, without notice to the Court.

*The character of the services rendered*.  The Court credits Counsel for negotiating this settlement.  However, Counsel did not engage in extensive discovery and sometimes missed Court Orders and deadlines.  For example, Counsel (1) only cited to a single exhibit in their summary judgment briefing, (2) verbatim copied eight of the fourteen pages of their summary judgment Response, ECF 81, from Plaintiffs' Amended Complaint, ECF 13, (3) argued in their summary judgment Response that "[t]he record is egregiously incomplete due exclusively to the Defendant's failure to fully participate in discovery," "severely limit[ing]" their ability to "respond[] to Defendant's Motion for Summary Judgment," but after a six-month extension past discovery and dispositive motions deadlines, two Court Orders to file a summary of the proposed deponents alleged role in the wrongful conduct, ECF 84, 90, and three Court Orders to take depositions, ECF 96, 104, 105, Counsel only took a single deposition, that of Anthony Tomaino, (4) failed to substantially comply with the Court's three separate Orders to submit specific factual evidence to support a finding that Mr. Gainey is incapacitated, ECF 124, 129, 136, and (5) despite three Court Orders, Counsel never subpoenaed any of the documentation they were ordered to produce. Counsel also failed to appear at the Final Approval Hearing on September 10, 2025.  ECF 169; ECF 170.

*The complexity and length of litigation*.  While federal civil rights litigation is certainly complex, Counsel holds themselves out as experts in the field and routinely litigate civil rights cases.

*The importance of the litigation*.  This is a very serious case that alleges that the City had a policy or custom of violating citizens' rights.

*The degree of responsibility incurred*.  Counsel was responsible for this litigation from filing to negotiation of a proposed settlement amount.  From what the Court can garner, Mr. Page, Mr. Mincey, and Ms. Shields of Mincey Fitzpatrick Ross LLC were originally responsible for this matter.  At some point, Mr. Mincey and Ms. Shields transitioned off the case and were replaced with Mr. Owens of the Killino Firm, P.C.  It appears that for the past year, Mr. Page and Mr. Owens have shared responsibility.  From the Court's observations, Mr. Owens has appeared in Court with Mr. Gainey at the Competency Hearing and Approval Hearing and transported Mr. Gainey to the psychiatric evaluation.  In contrast, Mr. Page has signed most recent filings.  It is the Court's understanding that Counsel have been solely responsible for filings and legal strategy, which is understandable given Mr. Gainey's limited mental abilities.

*Whether the fund involved was "created" by the attorney*.  Counsel was not involved in finalizing the Proposed Settlement Agreement, selecting the life insurance annuity, or creating the SNT.  These were handled by Ms. Yoshor as Guardian Ad Litem.

*The attorney's professional skills and efficiency in litigating the case*.  Counsel are well-respected members of the Philadelphia legal community.  As outlined, Counsel did demonstrate adequate professional skills in their representation of Mr. Gainey.

*The result the attorney was able to obtain*.  The Court credits Counsel for negotiating the $550,000 settlement amount, which is an outstanding result for Mr. Gainey.

*The ability of the client to pay a reasonable fee for the services rendered*.  Mr. Gainey is not able to pay a reasonable fee.  The Court did not appoint a Guardian Ad Litem lightly, knowing that in so doing, particularly over Mr. Gainey's objections, it was stripping Mr. Gainey of his ability to make his own personal determination as to the proposed settlement.  The Court only did so after a two-day Competency Hearing, Court Ordered and received independent psychiatric

evaluation, and review of hundreds of pages of medical records.  In finding that Mr. Gainey was incapacitated, a requirement to appoint a Guardian Ad Litem, the Court found that Mr. Gainey's "ability to receive and evaluate information effectively and [make and] communicate future decisions is impaired to the extent that Mr. Gainey is unable to manage financial resources, meet the essential requirements for physical health and safety, or understand the meaning and effect of legal proceedings."  ECF 147 at 7.  This finding was informed by Mr. Gainey's paranoid schizophrenia diagnosis and history of severe delusions, hallucinations, and persistent violent thoughts, all compounded by Mr. Gainey's inability to take prescribed medications and ongoing drug use.  Id.  Mr. Gainey's medical conditions, which curtail his employment and require expensive, ongoing care, make it impossible for Mr. Gainey to pay a reasonable fee.

The amount of money in question, $550,000, is a substantial sum.  However, Mr. Gainey is only in his fifties, yet unlikely to ever again hold regular employment.  Mr. Gainey will rely on the settlement for food, housing, transportation, medical care, psychiatric care, and all living costs. Every dollar paid in attorneys' fees is a dollar less for Mr. Gainey.

*The risk of non-payment*.  The Court acknowledges that Counsel took this case on a contingency basis and risked non-payment.

The Court also considers that Counsel provides no "documentation regarding the hourly rate normally charged by Plaintiffs' counsel."  See Johnson, 319 F. Supp. 2d at 591; see also ECF 157.  Rather, Counsel simply states that they request 35% of the fund in fees.  ECF 160.  However, in order for the Court to determine the reasonableness of the request for attorneys' fees, this Court has considerable experience awarding reasonable hourly rates.  See Johnson, 319 F. Supp. 2d at 591.

Applying all the above factors, the Court determines that Counsels' Fee Petition merits a 30% fee. The presumptive lodestar is $50,000 less than Counsels' requested award. Moreover, under five of the Nice factors and six of the Gunter and Prudential factors a 35% award is overly generous. Local Rule 41.2 and Pennsylvania Rule 2064 require the Court to protect the interests of incapacitated individuals, and the Petition does not satisfy the Court's concerns addressed in this Memorandum. As such, the Court will award to Counsel a fee award of 30%. Counsel shall be awarded $165,000.00 in attorneys' fees and $10,543.83 in costs.

### C. Orphans' Court

As this Court stated at the November 5, 2025, Hearing on Petition for Attorneys' Fees and Settlement, this Court would like the Orphans' Court of the Philadelphia Court of Common Pleas to assume jurisdiction over any future proceedings and oversee the SNT. ECF 175; ECF 178. Accordingly, Ms. Yoshor shall file an appropriate Petition with the Orphans' Court to establish a SNT, along with any other necessary papers and trust instruments. See Pa. O.C. Rule 2.4; Pa. O.C. Rule 2.4A; Pa. O.C. Rule 2.4B(1), (4).

Furthermore, pursuant to 62 P.S. § 1414(b)(4), Ms. Yoshor shall give Notice to the Pennsylvania Department of Human Services' Office of General Counsel to approve the SNT, including approval of the Master Trust Agreement and the Joinder Agreement. See Pa. O.C. Rule 2.4B(4). Ms. Yoshor shall also give Notice to the Social Security Administration and the applicable department of any other state that has provided Mr. Gainey with medical care under a state medical assistance program. See Pa. O.C. Rule 2.4B(4).

Once the SNT has been approved by the Pennsylvania Department of Human Services' Office of General Counsel, Ms. Yoshor shall send a fully executed copy of the SNT and the

approval letter from the Pennsylvania Department of Human Services' Office of General Counsel to the Special Needs Trust Depository.

**IV.    CONCLUSION**

An appropriate order has been entered.  ECF 178.


BY THE COURT:

/s/ Michael M. Baylson

_____

MICHAEL M. BAYLSON, U.S.D.J.


\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 22\22-4143 Gainey et al v. Philadelphia et al\22-4143 Final Approval Settlement Opinion.docx